DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} This case concerns the permanent custody of two minors. The central issue raised by this appeal is a claimed insufficiency of service of process upon the father of the children as related to the fact that he was incarcerated at an Ohio prison at the time the case arose and had been deported to Italy when the motion for permanent custody was filed. The mother of the children did not seriously pursue reunification and is not a party to this appeal. Upon consideration, this Court has concluded that the trial court did not err in denying the motion to dismiss based on insufficiency of service of process and that the trial *Page 2 
court did not otherwise err in terminating parental rights and placing the children in the permanent custody of the agency.
 I. {¶ 2} On September 13, 2005, the Summit County Children Services Board filed complaints in the juvenile court alleging that the four minor children of Angela R. were neglected and dependent and seeking temporary custody. Raffaella C. is the father of two of those children, D.C., born May 18, 2000, and G.C., born September 5, 2002. The other two children had a different father, and the case involving those children proceeded separately. The mother is not a party to this appeal.
 {¶ 3} According to the allegations in the complaint, on September 12, 2005, the mother left all four children, ranging in age from three to thirteen, alone and unsupervised with no way to reach her. Reportedly, the mother had a history of leaving the children alone, likely as a result of continuing mental health and substance abuse problems. The living conditions in the home were said to be "unsuitable." One of the children, D.C., had significant behavioral problems and had been diagnosed by a pediatric psychiatrist with a mood disorder. The father of D.C. and G.C. was incarcerated on charges of burglary. The Akron police removed the children from the home pursuant to Rule 6 of the Ohio Rules of Juvenile Procedure and placed them in the care of Children Services. *Page 3 
 {¶ 4} The matter proceeded to adjudication and disposition. On November 29, 2005, the trial court found D.C. and G.C. to be neglected and dependent, and placed them in the temporary custody of Children Services. On June 2, 2006, Children Services moved for permanent custody of the children. The father had reportedly been removed from the Mansfield Correctional Institution and deported to Italy. Nevertheless, the father retained local counsel and moved for dismissal of the case for insufficiency of service of process, for a six-month extension of temporary custody, and for custody of D.C. and G.C. The trial court denied the father's motion to dismiss and his motion for a six-month extension of temporary custody.
 {¶ 5} Following a hearing on the question of custody, the trial court entered judgment, finding that the children could not be placed with either parent within a reasonable time and that they should not be placed with either parent. The court also found that it was in the best interests of the children to be placed in the permanent custody of Children Services. The trial court, therefore, terminated the parental rights of both parents and placed the children in the permanent custody of Children Services. The father has timely appealed and has assigned three errors for review.
 II. {¶ 6} By his first assignment of error, the father of the children has argued that the trial court incorrectly overruled his motion to dismiss for insufficiency of *Page 4 
service of process. He has claimed that he was not properly served with the complaint or with the motion for permanent custody.
 1. {¶ 7} The Court will first consider the father's claim that he was not properly served with the complaint while he was incarcerated at the Mansfield Correctional Institution. He has asserted that service of the complaint was improper because, according to him, "there is no signed return receipt in the records of the action to verify that the father was actually served."
 {¶ 8} Rule 4.1 of the Ohio Rules of Civil Procedure provides that an instate defendant may be served with a complaint by: (1) certified or express mail service, (2) personal service, or (3) residence service. Rule 4.2(D) of the Ohio Rules of Civil Procedure provides that service of process upon an individual confined to a penal institution shall be made "by serving the individual" In general, certified mail no longer requires actual service upon the party receiving the notice or that only the addressee may sign for it, but is effective upon certified delivery.Castellano v. Kosydar, 42 Ohio St. 2d 107, 110 (1975). Ohio courts considering this rule have specifically concluded that prison officials may sign in receipt of the mailing and deliver or permit delivery of service of process to prisoners. See Security Natl. Bank and Trust Co.v. Jones, 2nd Dist. No. C.A. 2000-CA-59, 2001-Ohio-1534; State v.Jones, 12th Dist. No. CA2000-02-015, 2000 WL 1534701 (Oct. 16, 2000). Rule 4.1(A), cited by the father, provides that *Page 5 
service of process by certified mail may be "[evidenced by return receipt signed by any person" and that such return receipt shall be filed in the records of the action.
 {¶ 9} This Court's review of the record reveals that it does, in fact, contain a signed return receipt demonstrating that a summons was addressed to the father in care of the Mansfield Correctional Institution, that it was sent by certified mail, and that receipt of the summons was evidenced by a signature on November 4, 2005. (See Document 12B). The record further demonstrates that the juvenile court magistrate expressly found, in a journalized entry which was filed on November 29, 2005, that the father was served by certified mail on November 4, 2005.
 {¶ 10} In addition, the record reveals several actions by the father and his retained counsel that indicate the father did, in fact, have actual notice of the custody action. For example, just one month later, on December 6, 2005, the father wrote a letter to the trial judge indicating his awareness of the case and acknowledging his receipt of the magistrate's decision regarding adjudication and disposition. In addition, on August 3, 2006, an attorney filed a notice of appearance on behalf of the father. The attorney filed a motion for custody to be granted to his client and a motion for a six-month extension of temporary custody. He also moved for a continuance of the permanent custody hearing, then set for *Page 6 
August 23, 2006, and did attend the custody hearing that eventually took place on September 26, 2006.
 {¶ 11} Courts may presume service to be proper if the civil rules are followed unless the defendant rebuts the presumption by sufficient evidence. Nowak v. Nowak, 8th Dist. No. 80724, 2003-Ohio-1824, at ¶ 7 (citing Rafalski v. Oates, 17 Ohio App. 3d 65, 66 (1984)). Service of process upon an incarcerated person is presumed sufficient when the envelope containing the summons and complaint is received by an authorized prison official. Security Natl. Bank and Trust Co. v.Jones, 2nd Dist. No. C.A. 2000-CA-59, (2001-Ohio-1534); State v.Jones, 12th Dist. No. CA2000-02-015, 2000 WL 1534701 (Oct. 16, 2000).
 {¶ 12} In this case, the father has not presented any evidence to rebut the presumption of proper service. He has merely asserted in his appellate brief that the record fails to include a signed return receipt, a conclusion which is not borne out by this Court's review of the record. Therefore, because the civil rules were followed and the defendant has failed to rebut the presumption of proper service, the trial court was entitled to find that service of the complaint was proper. The father's argument regarding lack of service of the complaint is overruled.
 2. {¶ l3} Next, this Court will consider the father's claim that he was not properly served with the motion for permanent custody while he was in Italy. He has asserted that such service did not comply with either the Ohio Rules of Civil *Page 7 
Procedure or the Hague Service Conventions because the documents were sent in English, by registered mail, and the return receipt was not signed by him.
 {¶ 14} In regard to the Ohio Rules of Civil Procedure, the father points to Rule 4.3, which describes procedures for out-of-state service of process, and Rule 4.5, which describes an alternate procedure for service of summons and complaint in a foreign country. To the extent that Rule 4, et seq., may be applicable to this case, because a motion for permanent custody brings new or additional claims, there was no error in the procedures utilized in this case.
 {¶ 15} Rule 4.3 permits out-of-state service by certified or express mail. Registered mail was utilized here. Section 1.02(G) of the Ohio Revised Code, however, provides: "`Registered mail' includes certified mail and `certified mail' includes registered mail." Therefore, the use of registered mail in sending the motion for permanent custody to the father in Italy satisfied the certified mail requirement of Rule 4.3.
 {¶ 16} Rule 4.5, in relevant part, provides that service of a summons and complaint in a foreign country may be accomplished "[b]y any form of mail requiring a signed receipt, when the clerk of the court addresses and dispatches this mail to the party to be served[.]" Civ. R. 4.5(A)(5). When service is made under this rule, "proof of service shall include a receipt signed by the addressee or other evidence of delivery to the addressee satisfactory to the court." *Page 8 
 {¶ 17} In this case, the record indicates that Children Services first mailed a copy of the motion for permanent custody to the father at the Mansfield Correctional Institution. At that time, the prison was the "last known address" of the father. The mailing was returned, with a notation indicating that the father was no longer at the institution. Despite the fact that the father had been aware of the ongoing nature of this custody action involving his children, he did not provide written notice to the juvenile court of his new address when he left the Ohio prison system and the country. The Children Services caseworker testified that he had obtained an Italian address from the father during a telephone conversation with him on June 19, 2006, and the agency then sent him a copy of the motion by registered mail at that address.
 {¶ 18} In response, the father has asserted in his appellate brief that he did not receive the mailing. Significantly, the father has not indicated that the address used by the agency was incorrect, much less has he provided any evidence that the address was incorrect. Instead, he has merely claimed, again without evidentiary support or explanation, that the mailing must have been accepted by someone else and that he does not know who accepted it.
 {¶ 19} Once it is established that the rules for service have been complied with, a presumption arises that service was proper. MBA Realtyv. Little G, Inc., 116 Ohio App. 3d 334, 339 (1996). The burden is on the father to rebut the presumption of proper service. Id. *Page 9 
 {¶ 20} Because there has been compliance with the rules for service, the trial court was entitled to apply a presumption that the father received registered mail addressed to him. See In re Ellis, 7th Dist. No. 97 CA 246, 1999 WL 689212 (Aug. 27, 1999). Had the father presented any countervailing evidence regarding his purported non-receipt of the motion, then a different question would have been presented. Here, however, the father has merely asserted in his appellate brief that he did not receive the mailing. He has not offered any explanation, evidentiary or otherwise, as to why someone else would have accepted registered mail at his mailing address and not given it to him. The burden to overcome the presumption of proper service that arises from following the civil rules is upon the father since he is in the better position to explain any failure to receive mail addressed to him-particularly when he provided the address. Accordingly, the father has not demonstrated any lack of compliance with the Ohio Rules of Civil Procedure regarding service of the motion for permanent custody, and the trial court did not err in failing to grant his motion to dismiss on this basis.
 {¶ 21} Finally, the father has asserted that the service of the motion for permanent custody on him in Italy did not comply with the terms of the Hague Service Convention, more fully known as the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, (November 15, 1965), 20 U.S.T. 361, T.I.A.S. No. 6638, 658 U.N.T.S. 163. *Page 10 
 {¶ 22} The Hague Service Convention is a multilateral international treaty, directed to the manner of service of process abroad. The United States and Italy are both signatories. See Eli Lilly and Co. v. RousselCorp. 23 F. Supp. 2d 460, 472 (D.N.J. 1998). "By virtue of the Supremacy Clause, U.S. Const., Art. VI, the Convention pre-empts inconsistent methods of service prescribed by state law in all cases to which it applies." Volkswagenwerk Aktiengesellschaft v. Schlunk, 486 U.S. 694,699, (1988). See also Ward v. Ludwig, 4th Dist. No. 02CA681, 2002-Ohio-5948, at ¶ 7. The treaty provides that it "shall apply in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad." 20 U.S.T. at 362, Article 1. The signatories to the treaty sought to provide a "simpler way to serve process abroad, to assure that defendants sued in foreign jurisdictions would receive actual and timely notice of suit, and to facilitate proof of service abroad."Volkswagenwerk Aktiengesellschaft, 486 U.S. at 698 (1988).
 {¶ 23} According to Article 2 of the treaty, each signatory nation must establish a Central Authority to receive requests for service. Article 5 requires the documents to be written in or translated into one of the official languages of the nation addressed. Such documents are then to be personally served by the Central Authority. Lyman Steel Corp.v. Ferrostaal Metals Corp., 747 F. Supp. 389, 399 (N.D.Ohio 1990). In this case, the father has argued that the motion for permanent custody should have been served on him pursuant to the Article 5 procedures. *Page 11 
 {¶ 24} Articles 8 through 11 provide for several alterative methods of
service of process abroad. Volkswagenwerk Aktiengesellschaft,486 U.S. at 699.
Of particular relevance to this case is Article 10(a), which provides:
 Provided the State of destination does not object, the present Convention shall not interfere with-
 (a) the freedom to send judicial documents, by postal channels, directly to persons abroad. . . .
Thus, pursuant to Article 10(a), the Convention will not interfere with the freedom to send judicial documents by postal channels and directly to persons abroad, so long as the country of destination has not objected to that part of the treaty.
 {¶ 25} Article 21 provides that ratifying states may reject certain service provisions while generally ratifying the treaty and accepting other parts. Some countries have chosen to specifically reject the provisions of Article 10. See Lyman Steel, 747 F. Supp. at 400. The father has admitted that Italy has not objected to Article 10. Therefore, the treaty permits judicial documents sent to parties in Italy to be sent by "postal channels, directly to persons abroad[.]" Art. 10. That is, judicial documents may be sent to parties in Italy pursuant to Article 10(a) by registered mail. Cf. Lyman Steel,747 F. Supp. at 400.
 {¶ 26} This Court is aware of the existence of a conflict among the courts of this nation regarding whether Article 10(a) permits service of process to be effectuated by mail. The conflict turns, in large part, on the meaning of the word "send" as it is used in Article 10. See generally Beverly L. Jacklin, Annotation, *Page 12 Service of process by mail in international civil action as permissibleunder Hague Convention, 112 A.L.R. Fed. 241, § 2[a], (1993). Some courts, including the United States District Court for the Northern District of Ohio, have concluded that use of the word "send" rather than the word "service" in Article 10(a) has no significance. As long as the receiving country has not objected to the provision in Article 10(a), as is true for Italy, these courts hold that Article 10(a) of the Hague Service Convention will permit service of process by registered mail. See e.g. Ackerman v. Levine, 788 F.2d 830, 839 (2d Cir. 1986);Sibley v. Alcan, Inc., 400 F. Supp. 2d 1051, 1055 (N.D.Ohio 2005); andLyman Steel, 747 F. Supp. at 400.
 {¶ 27} Other courts, including the second appellate district in Ohio, have expressed the view that Article 10(a) of the Convention was never intended to authorize service of process by mail, but rather was meant to provide a method for the transmittal of judicial documents subsequent to the service of a complaint. See e.g. Eli Lilly and Co. v. RousselCorp., 23 F. Supp. 2d 460, 471 (D.N.J. 1998). Okubo v. Shimizu, 2nd Dist. No. 2001 CA 134, 2002-Ohio-2621; Meek v. Nova Steel ProcessingInc., 124 Ohio App. 3d 367, 371 (1997). These courts have further concluded that service of process by registered mail is never permitted under the treaty. See e.g. Bankston v Toyota Motor Corp., 889 F.2d 172,174 (8th Cir. 1989).
 {¶ 28} Notwithstanding this split in opinion over whether Article 10(a) applies to service of process of an initial pleading, there is no dispute that Article *Page 13 
10(a) provides a method of sending subsequent judicial documents to a party to the action. See e.g. Eli Lilly, 23 F. Supp. 2d at 471. Therefore, Article 10(a) applies in the present case. Italy has not objected to Article 10(a) and the document sent by registered mail was not an initial complaint, but was, rather, a subsequent judicial document in a matter which had already been initiated.
 {¶ 29} The motion for permanent custody was sent by registered mail to the children's father at a street address in Italy, and the receipt was signed as accepted. The return receipt is in the record of this case. As noted above, the father has not presented any countervailing evidence regarding the fact that the documents were sent by registered mail to his mailing address in Italy.
 {¶ 30} The father has not argued that reliance upon the provisions of Article 10(a) was erroneous; he has merely asserted his belief that personal service through the Central Authority would have been "more reliable." He has suggested that, instead of relying on registered mail, Children Services should have used "the alternate provisions" provided by Article 5 of the Hague Service Convention.
 {¶ 31} This Court concludes that the use of the procedures of Article 10(a) of the Hague Service Convention was not inappropriate in this case. It further concludes that the trial court did not err in denying the motion to dismiss for insufficiency of service of process. In addition, the father has not claimed that any jurisdictional or due process errors were made in this case, and the Court finds none. The father's first assignment of error is overruled. *Page 14 
 B. {¶ 32} The father's second assignment of error is that the trial court incorrectly denied his motion for a six-month extension of temporary custody. The decision to grant or deny an extension of temporary custody is a discretionary one. See R.C. 2151.41.5(D)(1) and (2). Before a trial court is authorized to exercise that discretion, however, it must find, by clear and convincing evidence, that three things are true:
 R.C. 2151.415(D)(1) authorizes the trial court to extend temporary custody for six months only if it finds, by clear and convincing evidence, (1) that such an extension is in the best interests of the child, (2) that there has been significant progress on the case plan, and (3) that there is reasonable cause to believe that the child will be reunified with a parent or otherwise permanently placed within the period of extension.
In re P.B., 9th Dist. No. 23276, 2006-Ohio-5419, at ¶ 36. See also R.C. 2151.41.5(D)(1). Clear and convincing evidence is that which will produce in the trier of fact "a firm belief or conviction as to the facts sought to be established." In re Adoption of Holcomb,18 Ohio St. 3d 361, 368 (1985) (quoting Cross v. Ledford, 161 Ohio St. 469, paragraph three of the syllabus (1954)).
 {¶ 33} In his appellate argument, the father has addressed this three-prong test. He has stated that it is generally in the best interest of children to remain in the custody of their biological parents and that an extension would not have harmed his children because they are receiving good care in their foster placement. Second, he has contended that his incarceration and deportation "were beyond *Page 15 
 [his] control" and have hindered his ability to be with his children and make support payments. Finally, he has contended that there is reasonable cause to believe that reunification could take place within the next six months, and has claimed that he "has been making efforts to return to the United States to regain custody of the children."
 {¶ 34} Certainly, parents have a fundamental interest in the care, custody, and maintenance of their children, and children, similarly, have a fundamental interest in maintaining a relationship with their parents. See Santosky v. Kramer, 455 U.S. 745, 753 (1982). That is not to say, however, that it is always in the best interest of children to remain in the custody of their parents. That determination involves a consideration of all relevant factors, including those enumerated in Section 2151.41.4(D) of the Ohio Revised Code: the relationships of the children, the wishes of the children, the custodial history of the children, and the children's need for permanence in their lives. SeeIn re S.N., 9th Dist. No. 23571, 2007-Ohio-2196, at ¶ 27.
 {¶ 35} In regard to these factors, there is no evidence that the children were ever in the custody of their father, and the record reveals little in the way of efforts by the father to maintain a relationship with his children or to make substantive efforts toward reunification during the course of these proceedings. There is some evidence that he participated in visits with them before he was incarcerated. The father's first wife testified that he had an affectionate relationship with his 16 children, and that he asked about them in telephone conversations with her. According to D.C.'s psychiatrist, however, D.C.'s view of his father was very narrow. And according to the caseworker, as of the hearing in September 2006, the father had not seen his children since April 2005. There is no evidence of any cards, letters, or telephone calls by the father to his children since that time. In addition, the father has failed to provide appropriate support to his children, being $5000 in arrears on his child support payments by September 2005. The caseworker testified that the children needed permanence and stability in their lives, and there were no relatives that were willing and able to provide care for the children. While the children were reportedly doing well in their foster placement, delay in resolving their custodial situation would not have been in their best interest.
 {¶ 36} While the father has asserted that he is attempting to return to the United States, he has offered no reason to believe that he will ever be permitted to return to the United States. Thus, there was no reasonable basis for the trial court and there is no reasonable basis for this Court to conclude that the children can be reunified with their father within six months.
 {¶ 37} The father has suggested that his incarceration and deportation, and thus his inability to maintain a relationship with and provide support to his children, "were beyond [his] control." This Court does not accept such a *Page 17 
rationalization. The responsibility for his criminal conduct and the consequences thereof must rest with him.
 {¶ 38} Upon consideration, this Court concludes that the father has failed to demonstrate that the trial court abused its discretion in denying the motion for a six-month extension. The evidence before the trial court fully supports the determination that an extension of temporary custody was not in the children's best interest, that the father had made no progress towards reunification, and that there was no reason to believe that the children would be reunified with him within the time of an extension. Accordingly, the second assignment of error is without merit.
 C. {¶ 39} By his final assignment of error, the father has contended that the trial court incorrectly denied his motion to dismiss for failure to provide him with appointed counsel. The argument is overruled because the record reveals that the children's father failed to properly apply for appointed counsel.
 {¶ 40} The State of Ohio grants indigent parents the right to appointed counsel in juvenile proceedings. See State ex rel. Asberry v.Payne, 82 Ohio St. 3d 44, 48 (1998). This right will be enforced upon proper application for appointed counsel, including providing evidence of indigency. See In re Careuthers, 9th Dist. No. 20272, 2001 WL 458681
(May 2, 2001). The record indicates that the father was notified of the procedures by which counsel may be *Page 18 
appointed for indigent parties, i.e., contacting the bailiff of the trial judge and verifying identity and income. R.C. 2151.31.4(D). There is no indication in the record that the father complied with these procedures. Consequently, the juvenile court was not obliged to appoint counsel for the father.
 {¶ 41} In December 2005, following his receipt of a magistrate's decision, the father did send a letter to the trial judge, and the letter included a reference to the fact that the father had requested the Public Defender to represent him at an upcoming hearing. The letter was received in the trial court on December 21, 2005, and is contained in the file of this case. The entire letter is as follows:
 Dear Judge:
 I am in receipt of the Judgment Entry Order concerning case number DN 05-09-0688 and DN 05-09-0689, [D.C.] and [G.C.] respectfully.
 It is my hope that Judicial Release will be granted in January so that I may attend the February 9, 2006 hearing. However, since these matters often take additional time, I expect the Public Defenders office to have counsel present to represent my interests concerning my children. I have sent a motion to the Public Defenders Office requesting representation.
 The sworn testimony by Janice Dillen is incorrect. My out date is 5/14/07 should I not receive Judicial [Release].
 Sincerely,
(Document 17).
 {¶ 42} According to the magistrate's decision, to which the father's letter responded, caseworker Dillen had testified that the father "is currently incarcerated and has a release date in 2008." It appears that the purpose of the *Page 19 
father's letter was to correct the record regarding his expected "out date." The letter suggests that the father's "out date" was, instead, May 14, 2007, or earlier if he was granted judicial release. The letter included only a passing reference to the fact that the father had sought legal representation from the Public Defender.
 {¶ 43} The father has complained that, subsequent to the court's receipt of this letter, no steps were taken by the trial court to provide him with appointed counsel. The letter, however, did not constitute a request that the trial court appoint counsel for him. Rather, the letter merely informed the court that he had requested the Public Defender's Office to represent him. There is no documentation in the record that the father had requested the trial court to appoint counsel for him. Moreover, there is no indication in the record that he was indigent.
 {¶ 44} The father eventually retained counsel to represent him in the trial court. Such counsel filed a notice of appearance on August 3, 2006, filed several motions, and participated in the hearing on the motion for permanent custody on September 26, 2006.
 {¶ 45} The father has not demonstrated that the trial court erred in failing to appoint counsel for him. The third assignment of error is overruled.
 III. {¶ 46} The father's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed. *Page 20 
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to appellant.
CLAIR E. DICKINSON FOR THE COURT
MOORE, J. CONCURS
 CARR, P. J. DISSENTS, SAYING: *Page 21 
 {¶ 47} Because I believe the father was denied the right to legal counsel during much of this permanent custody proceeding, I must dissent.
 {¶ 48} This case was initiated on September 13, 2005 while the father was incarcerated. After two failed attempts at service, the father was served with summons, including notification of his right to counsel, on November 4, 2005. The father was notified that he was required to appear in person before the judicial secretary or to call the court bailiff during business hours in order to apply for counsel. Neither option was meaningful for an incarcerated individual.
 {¶ 49} Hearings as to adjudication and disposition were had on October 28, 2005 and November 18, 2005. The first hearing was actually conducted before the father received his initial notice. The trial court entered its decision as to adjudication and disposition on November 29, 2005. In December 2005, within one month of his initial notice of these proceedings, the father prepared a notarized letter to the juvenile court, which letter indicated that he had previously requested the public defender's office to appoint counsel for him in this matter and expected to have counsel at the next hearing.
 {¶ 50} The majority concludes that this letter did not constitute sufficient compliance with the requirements to obtain appointed counsel. In my view, this letter from the father should have alerted the juvenile court to the father's desire for appointed counsel and should have inspired, at the least, a return letter from the *Page 22 
juvenile court informing the father of the need to take further actions. My review of the record indicates that no response to the letter was made by the juvenile court whatsoever.
 {¶ 51} Eight months later, in August 2006, and despite the fact that he was then in Italy, the father was able to retain counsel. At that point, the agency had already filed a motion for permanent custody and the hearing on the motion was set. Retained counsel was able to secure a brief delay in the hearing, file a motion for custody to the father, and participate in the hearing, including the presentation of one character witness on behalf of the father. Such participation, however, does not alter the fact that the father was without counsel for eight critical months prior to the permanent custody hearing. He was incarcerated or out of the country throughout that period.
 {¶ 52} This is not a case where an incarcerated parent did absolutely nothing to inform the trial court or the children's services agency of his desire for appointed counsel. Cf. In re Enochs (Feb. 10, 1997), 5th Dist. No. 96CA0218; In re Jeffrey D. (Sept. 30, 1997), 6th Dist. No. L-97-1012. The parent in this case did write a letter to the juvenile court and the letter clearly indicates his desire to have counsel appointed for him. Indeed, had this parent been able to stand before the trial court and make the same statement as is contained in his letter to the court, his misunderstanding would doubtless have been immediately corrected and his right to counsel addressed. *Page 23 
 {¶ 53} The presence or absence of prejudice in the record is not dispositive where, as here, the father was incarcerated or out of the country and was without counsel until one month before the permanent custody hearing. R.C. 2151.352 provides that a child's parent is entitled to representation by legal counsel "at all stages of the proceedings" under Chapter 2151. If a party appears without counsel, the court is obligated to ascertain the party's knowledge of his right to counsel and to appointed counsel if indigent. Id. The statute provides that a continuance may be granted in order to permit the parent to obtain counsel. Id. I agree with the words of Judge William Baird regarding the right to counsel in another permanent custody case: "The permanent taking away of one's children by the government * * * is a matter of such serious consequence as to warrant scrupulous adherence to the requirement of providing appointed counsel." In re Misty (Apr. 6, 1994), 9th Dist. No. 16276 (Baird, J. dissenting.)
 {¶ 54} I would reverse the judgment of the trial court. *Page 1