DECISION AND JOURNAL ENTRY
{¶ 1} Harold T. ("Father") has appealed from the judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated his parental rights to his two children, and placed them in the permanent custody of the Summit County Children Services Board ("CSB"). This Court affirms.
 I. {¶ 2} Harold T. is the father of H.T., born July 29, 2006, and Ha.T, born March 30, 2004. Misty T. ("Mother") is the mother of the children. CSB has had an extensive history with the family. Mother and Father had previously had their parental rights terminated as to three mutual children, and in addition, Mother had had her parental rights terminated as to two more children. The present case was initiated when Mother gave birth to H.T., and both she and the baby tested positive for drugs. Mother tested positive for cocaine and marijuana and baby H.T. tested positive for cocaine. Ha.T, born two years earlier, had also tested positive for cocaine at *Page 2 
the time of his birth, and had been in the temporary custody of the agency for the first eight months of his life. He was returned to the parents on December 20, 2004, under an order of protective supervision. The order of protective supervision terminated on March 30, 2005.
 {¶ 3} The hospital notified CSB of H.T.'s condition at the time of his birth and CSB filed complaints in juvenile court, alleging that H.T. was abused, neglected, and dependent and alleging that Ha.T. was dependent. The agency obtained an interim order of emergency temporary custody of both children. Procedurally, this case had been dismissed twice and re-filed because the dispositional hearing was not commenced within 90 days of the filing of the original complaint. The complaint under which this case ultimately proceeded was filed on February 21, 2007. The complaint requested a dispositional order of permanent custody and included notice of both the adjudicatory and dispositional hearings.
 {¶ 4} A guardian ad litem was appointed for the children. Upon adjudication, the trial court found H.T. to be abused, neglected, and dependent, and found H.T to be dependent as alleged. The trial court granted CSB's reasonable efforts bypass request, based on the fact that both parents had previously had their parental rights terminated with respect to siblings of the children. Neither parent was present for either the adjudicatory or dispositional hearing.
 {¶ 5} On May 16, 2007, the trial court granted permanent custody of the children to the agency. The trial court found that the children could not be returned to their parents within a reasonable time or should not be returned to them. The trial court based its conclusion on the predicate findings that the parents had their parental rights involuntarily terminated with respect to siblings, and also that the parents' drug abuse problems were so chronic and severe as to make it impossible to return the children to their home. In addition, the trial court found that it was in the best interests of the children to be placed in the permanent custody of the agency. *Page 3 
 {¶ 6} Four months after the decision of the trial court, Father contested the issue of service by filing a motion pursuant to Civ.R. 60(B). Following a hearing and a ruling vacating the original order, CSB filed its own motion to vacate. Ultimately, the trial court let stand the original order of permanent custody to the agency. Father has appealed from that judgment and has assigned one error for review.
 II. ASSIGNMENT OF ERROR "The Trial Court lacked subject matter jurisdiction to award the Permanent Custody of the children to the Summit County Children Services Board, because the Appellant was not served with the complaint and the Court's file did not contain proof of service at the time of the adjudication and disposition hearings, in violation of his due process rights under the Fifth and Fourteenth Amendments of the United States Constitution."
 {¶ 7} In his supporting argument, Father argues that the trial court did not have personal or subject matter jurisdiction to award permanent custody of his children to CSB because the record contains no evidence that he was properly served with notice of the initial complaint or with notice of the permanent custody hearing. Father argues, in the alternative, that even if he was properly served, the absence of two service-related documents from the file at the time of the adjudicatory and dispositional hearings violates his due process right to notice. These arguments are without merit.
 {¶ 8} Initially, we find that the juvenile court had subject matter jurisdiction of this case. "Subject matter jurisdiction focuses on the court as a forum and on the case as one of a class of cases, not on the particular facts of a case or the particular tribunal that hears the case." State v. Swiger (1998), 125 Ohio App.3d 456, 462. The juvenile court has exclusive original jurisdiction over children who are alleged to be neglected or dependent, R.C. 2151.23(A)(1), and also has exclusive original jurisdiction to determine the custody of any child not a ward of *Page 4 
another state court. R.C. 2151.23(A)(2). State ex rel. Brooks v.O'Malley, 117 Ohio St.3d 385, 2008-Ohio-1118, at ¶ 8. See, also, In reCross, 96 Ohio St.3d 328, 2002-Ohio-4183, at ¶ 10. The portion of Father's argument which challenges the subject matter jurisdiction of the juvenile court in this case is overruled.
 {¶ 9} The main focus of Father's challenge, however, is directed to the question of whether the juvenile court had personal jurisdiction over him. The juvenile court acquires personal jurisdiction over a party in a custody proceeding once the party has been duly served with summons and provided notice of the proceedings. In re Miller (1986),33 Ohio App.3d 224, 226. See, also, In re Xavier D.-S. (Aug. 14, 2000), 6th Dist. No. L-99-1342 (holding that jurisdiction attaches once a party is served with the motion for permanent custody and notice of the initial hearing). Moreover, jurisdiction can be acquired over a party in the absence of proper service when the party voluntarily participates in the proceedings. In re Crow (Jan. 22, 2001), 2d Dist. Nos. 1521 and 1522.
 {¶ 10} The facts relevant to the issue of service are as follows. Four months after the decision of the trial court, Father wrote a letter, dated September 20, 2007, to the juvenile court magistrate, stating that he understood that permanent custody had been granted to CSB. In that letter, he indicated that he "was unaware at that time of the Court proceedings. I was not serviced with the Court Paper, nor did I ever receive another Attorney." Father requested that the magistrate grant him "a special appeal" because the time had run for a regular appeal. Father then wrote a letter to the trial judge, dated September 25, 2007, again stating that he had not been informed of the court date, he was never served with notice of the court date or time, and asserting that he would have attended if he had known. He explained that he had spoken to the magistrate and also to the caseworker, who advised him to write to the trial judge. He *Page 5 
claimed that he learned about the decision of the trial court sometime in June, but he was unable to file an appeal or to obtain an attorney at that time. He concluded by again requesting "a special appeal."
 {¶ 11} The trial judge conducted a hearing on the question of whether Father was served with the complaint for permanent custody. Following the hearing, the trial court concluded that Mother had been served both personally and by certified mail in March 2006, but that proper service upon Father, who had been living separate from Mother from time to time, was never obtained because there was no evidence of service at his last known address of 1300 South Hawkins and also because there was no evidence that the agency had exercised due diligence in seeking to obtain service on Father before resorting to service by publication. See Civ.R. 4.4 and In re Mullenax (1996), 108 Ohio App.3d 271. Accordingly, the trial court vacated the order granting permanent custody and set the matter for re-hearing. The order specifically advised the parents that they could obtain counsel by making application with the bailiff.
 {¶ 12} On December 27, 2007, CSB filed a motion to vacate pursuant to Civ.R. 60(B), based on "newly discovered information regarding service upon father." CSB stated that the trial court "may not have had a complete file" when it determined that Father was not properly served. CSB stated that, on December 26, 2007, the Juvenile Court Clerk's Office discovered two items noted on the docket that had been missing from the court file. The items that were subsequently located by the Clerk's Office were: (1) the Affidavit for Service by Publication, file-stamped March 15, 2007, indicating the efforts made to locate Father, and (2) a summons issued to Father at 1300 S. Hawkins which included a return, signifying that he was personally served on March 20, 2007. With that information, the trial court issued an order staying the decision to vacate and allowing the parents the opportunity to respond. The parents responded *Page 6 
pro se, with personal handwritten letters. The letters did not dispute the evidence regarding service, but rather stated the parents' desire to be reunited with their children.
 {¶ 13} On January 18, 2008, the trial court issued its decision. The court indicated that lack of service had been the only basis for its decision vacating permanent custody, and because time-stamped court documents indicated that that decision was in error, the court vacated the decision of December 20, 2007, and reinstated the order granting permanent custody.
 {¶ 14} On appeal, Father has argued that the trial court judgment is void because he was not properly served, and also claims that the subsequent discovery of documents demonstrating personal service does not cure the error. We address the second argument first. Father has not submitted any legal authority to support his claim that the trial court's personal jurisdiction over him depended on the physical presence of the documents in the file at the time of the adjudicatory and dispositional hearings. Nor are we aware of any such authority. This Court has previously considered a case where the return of service was belatedly docketed and that fact did not create a bar to a finding of proper service. See Sokol v. Spigiel, 9th Dist. No. 05CA008839,2006-Ohio-4408, at ¶ 2 and ¶ 6. In the present case, service had been indicated on the court's docket, but the documents were missing from the file for some period of time. This Court concludes that the fact that the documents demonstrating service may not have been in the court's file at the time of the adjudicatory or dispositional hearings did not, in and of itself, deprive the trial court of personal jurisdiction over Father.
 {¶ 15} Next, we consider whether the record supports the trial court's finding that Father was properly served with notice of the proceedings and that personal jurisdiction was established. Courts may presume service to be proper if the civil rules regarding service have been followed unless the opposing party rebuts the presumption by sufficient evidence. In re *Page 7 D.C., 9th Dist. No. 23484, 2007-Ohio-2344, at ¶ 11. Father has attempted to rebut the presumption of proper service by claiming in an unsworn letter that he was never served. Some courts in Ohio have found that an uncontroverted affidavit, attesting to a lack of service, is sufficient evidence to have a default judgment vacated, see Rafalski v. Oates
(1984), 17 Ohio App.3d 65, 66-67, while others have preferred that the trial court conduct a hearing in order to allow the judge to assess the competency and credibility of the evidence, particularly in light of the self-serving nature of such statements. See Cincinnati Ins. Co. v.Emge (1997), 124 Ohio App.3d 61, 64. In this case, where Father's assertion was unsworn, but also uncounseled, the trial court acted within its discretion in conducting an evidentiary hearing on the issue of service.
 {¶ 16} At that hearing, Father stated that he had never signed for papers giving notice of the permanent custody hearing and did not get served at 1300 South Hawkins. He also stated that he was not aware that his wife signed in receipt of a certified mail notice of the hearing. He admitted that he had been residing at two separate addresses during the course of the proceeding because his relationship with his wife kept changing.
 {¶ 17} The attorney for CSB indicated that the agency attempted to serve both parties at both addresses. Pat Westfall, the CSB caseworker assigned to this case testified that she attempted to have contact with the parents during visits, but they missed a large majority of the visits. She testified that no one ever answered the doors when she went to their places of residence, even though there might be lights on, shoes on the porch, and she would hear voices from inside the home. She also stated that the parents only contacted the agency "on extremely rare occasions." She had a similar lack of success with telephone messages. She would leave messages or notes at both homes, including notices of hearings. She specifically recalled hand-delivering two copies of the court's order setting the permanent custody hearing to the parents *Page 8 
while they were sitting in a car at the South Hawkins address. Father was on his cell telephone, so she handed both envelopes to Mother.
 {¶ 18} Linda Bennett, the guardian ad litem, stated that she also had difficulty contacting the parents. She recalled telling Father at the visit on April 23, 2007, that the permanent custody hearing was up-coming, that it was very important, and that it would involve the termination of parental rights.
 {¶ 19} Father admitted that he was residing at the South Hawkins address at the time service was reportedly accomplished there. Father claimed that he had been attending visitation with his children at the CSB visitation center, but disputed that he missed a lot of visits. He also disputed receiving notice of the permanent custody hearing from the caseworker. Father claimed that he attempted to obtain counsel, but when the trial court noted that there was no application for counsel in the file, Father conceded that his application may have been in a prior case. Mother stated that she never opened the envelope containing notice of the proceedings because she did not believe anything could happen until they had an attorney. Unfortunately, Mother's failure to open the envelope deprived her of notice of the nature of the proceedings, her right to counsel, the process by which to obtain counsel, and the dates of the scheduled hearings.
 {¶ 20} At the conclusion of the hearing, the trial court found in favor of Father based upon the lack of documents demonstrating personal service and the lack of an affidavit justifying resort to service by publication. Shortly thereafter, CSB was able to locate those documents, which had been indicated on the docket. These documents indicated that a process server completed personal service of summons on Father at 1300 South Hawkins on March 20, 2007. The summons notified Father that a complaint regarding his two children had been filed and that there was a request for permanent custody. The summons included notice of the adjudicatory *Page 9 
hearing as well as notice of the permanent custody hearing. The summons further advised Father of his right to an attorney and the procedure by which to apply for counsel. The return indicated that personal service was obtained on March 20, 2007, and was time-stamped into the file on March 25, 2007. At the hearing, Father had verified that he was living at the South Hawkins address at that time. Personal service does not require a signature by the party being served. See Civ.R. 4.1(B). Therefore, Father's claim that he did not sign for any papers is inconsequential. On the basis of these documents, the trial court reversed its ruling and reinstated the order of permanent custody.
 {¶ 21} The hearing on the question of service allowed the trial court to assess the persuasiveness of the evidence and the credibility of the witnesses. The trial court may find that the evidence of non-service lacks credibility or that there is insufficient evidence of non-service. Actual service need not be proved in order to contradict even a sworn affidavit attesting to non-service. Ohio Civ. Rights Comm. v. First Am.Properties, Inc. (1996), 113 Ohio App.3d 233, 239. Based upon this record, the trial court did not err in concluding that Father's unsupported assertion that he did not receive service fails to rebut the presumption of proper service. Father's assignment of error is overruled.
 III. {¶ 22} Father's sole assignment of error is overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.
 Judgment affirmed. *Page 10 
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
CARR, P. J., WHITMORE, J. CONCUR
(Baird, J., retired, of the Ninth District Court of Appeals, sitting by assignment pursuant to § 6(C), Article IV, Constitution.) *Page 1