[Cite as *In re A.C.*, 2022-Ohio-1081.]

STATE OF OHIO      )
                    )ss:
COUNTY OF SUMMIT    )

IN RE: A.C.
      D.C.
      D.C.

IN THE COURT OF APPEALS
NINTH JUDICIAL DISTRICT

C.A. Nos.    30086, 30087, 30088,
                 30110, 30113, 30114,
                 30126, 30127, 30128

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE Nos.   DN 20-09-558
               DN 20-09-559
               DN 20-09-560

DECISION AND JOURNAL ENTRY

Dated: March 31, 2022

SUTTON, Judge.

{¶1} Appellants Mother, Father, and Grandmother appeal the judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated the parents' parental rights and placed their three children in the permanent custody of Summit County Children Services Board ("CSB" or "the agency"). This Court affirms.

I.

{¶2} Mother and Father are the biological parents of Do.C. (d.o.b. 6/23/10), De.C. (d.o.b. 1/29/13), and A.C. (d.o.b. 7/11/14). Grandmother is the children's maternal grandmother. Initially, Mother was the legal custodian of the children. In 2015, however, CSB removed the children from Mother's custody. They were adjudicated neglected and dependent and placed in the legal custody of their maternal aunt. In 2018, the agency removed the children from their

aunt's home and filed new complaints. The children were adjudicated dependent and placed in the legal custody of Grandmother.

{¶3} In 2020, Grandmother informed CSB that she was unable to maintain the children in her home due to her ongoing health issues. In addition, Mother and her boyfriend, whose relationship was volatile, were living in Grandmother's home and refused to leave. CSB removed the children and filed complaints alleging that they were abused, neglected, and dependent. Prior to adjudication, all parties agreed that the children would be placed in Father's temporary custody under the protective supervision of the agency.

{¶4} After the adjudicatory hearing, the juvenile court adjudicated the children dependent, dismissed the allegations of abuse and neglect, and maintained the children in Father's temporary custody. By the time of the dispositional hearing, however, Father had returned the children to Mother in violation of court order. He told the agency caseworker that he felt overwhelmed and was unable to maintain the children in the home he shared with his girlfriend. The juvenile court placed Do.C., De.C., and A.C. in the temporary custody of CSB and adopted the agency's case plan as an order. Mother, Father, and Grandmother were granted supervised visitation as the parties might agree.

{¶5} The original case plan required Mother to participate in drug abuse and mental health counseling and follow all recommendations, submit to random drug screens, and demonstrate the ability to provide for the basic needs of the children. Father and his girlfriend were required to schedule in-home family services with one of two approved agencies and discuss what they had learned with the CSB caseworker. The case plan required Grandmother to obtain a mental health assessment and follow all therapeutic recommendations. The agency amended the case plan shortly after the trial court first adopted it to remove Father's girlfriend due to her lack

of interest in providing a home for the children. Father's case plan objective was modified to require him to participate in in-home services to address stress management, parenting deficiencies, and issues of loss. Although CSB noted its concern in the case plan that Father lacked stable income and independent housing, there was no specific objective relating to basic needs. However, the caseworker testified that the in-home services requirement was geared to help Father address basic needs, including housing issues.

{¶6} Five months after filing its complaints, CSB filed a motion for permanent custody of the children. Grandmother filed a motion for a first six-month extension of temporary custody. The juvenile court heard the motions when the case had been pending for nearly one year. After the dispositional hearing, the trial court denied Grandmother's motion for an extension of temporary custody, granted the agency's motion for permanent custody, and terminated Mother's and Father's parental rights. Mother, Father, and Grandmother each filed timely notices of appeal. Upon the parties' requests, the juvenile court stayed the judgment pending appeal. Mother raises one assignment of error, Grandmother presents three, and Father asserts two for consideration. Some assignments of error are consolidated to facilitate our review.

II.

**FATHER'S ASSIGNMENT OF ERROR I**

THE DECISION OF THE SUMMIT COUNTY JUVENILE COURT IS VOID DUE TO INSUFFICIENT SERVICE, IN VIOLATION OF THE DUE PROCESS CLAUSES OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, ARTICLE ONE, SECTION TEN OF THE OHIO CONSTITUTION, SECTION 2151.29 OF THE OHIO REVISED CODE, OHIO RULE OF JUVENILE PROCEDURE 16, AND OHIO RULE OF CIVIL PROCEDURE 4.1.

{¶7} Father argues that the permanent custody judgment is void for lack of personal jurisdiction because he was not properly served with either the complaint or the motion for permanent custody. This Court disagrees.

{¶8} This Court recognizes that "'[t]he juvenile court acquires personal jurisdiction over a party in a custody proceeding once the party has been duly served with summons and provided notice of the proceedings.'" *In re J.A.*, 9th Dist. Summit No. 29462, 2020-Ohio-4677, ¶ 12, quoting *In re H.T.*, 9th Dist. Summit No. 24087, 2008-Ohio-3436, ¶ 9. However, "[a] party waives any challenge to personal jurisdiction if [he] fails to raise it 'through the first pleading, motion, or appearance in the trial court.'" *In re J.A.* at ¶ 12, quoting *In re M.T.-B.*, 9th Dist. Summit No. 26866, 2013-Ohio-4998, ¶ 7.

{¶9} In this case, Father appeared at a pre-trial hearing, at which time he accepted temporary custody of the children. He later appeared at the adjudicatory hearing and, thereafter, was represented by counsel at every subsequent hearing. At no time did Father challenge the juvenile court's personal jurisdiction over him. Accordingly, he has waived that issue. Father's first assignment of error is overruled.

## MOTHER'S ASSIGNMENT OF ERROR

THE TRIAL COURT COMMITTED PLAIN ERROR AND REVERSIBLE ERROR IN GRANTING PERMANENT CUSTODY TO [CSB].

## GRANDMOTHER'S ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED WHEN IT GRANTED PERMANENT CUSTODY OF THE MINOR CHILDREN TO [CSB] AS [CSB] FAILED TO MEET ITS BURDEN OF PROOF AND THE TRIAL COURT'S DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**GRANDMOTHER'S ASSIGNMENT OF ERROR II**

THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT GRANTED PERMANENT CUSTODY TO [CSB] WHEN THE AGENCY DID NOT PROVIDE REASONABLE REUNIFICATION EFFORTS.

**GRANDMOTHER'S ASSIGNMENT OF ERROR III**

THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED PLAIN AND REVERSIBLE ERROR WHEN IT GRANTED PERMANENT CUSTODY OF THE MINOR CHILDREN TO [CSB] AND DENIED GRANDMOTHER'S MOTION FOR A SIX-MONTH EXTENSION AS IT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND NOT IN THE BEST INTEREST OF THE CHILD[REN].

**FATHER'S ASSIGNMENT OF ERROR II**

THE TRIAL COURT ERRED WHEN IT GRANTED PERMANENT CUSTODY TO [CSB] WHERE THE DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶10} Mother, Father, and Grandmother argue that the juvenile court's judgment awarding permanent custody of the children was against the manifest weight of the evidence. While there is some discussion regarding the factors the juvenile court must find before it may terminate parental rights, the parties focus their arguments by challenging the agency's alleged failure to use reasonable efforts to reunify the children with family. This Court is not persuaded by the appellants' arguments.

{¶11} In considering whether the juvenile court's judgment is against the manifest weight of the evidence, this Court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new [hearing] ordered." (Internal quotations and citations omitted.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20. When weighing the evidence, this Court "must always be mindful of the presumption in favor of the finder of fact." *Id.* at ¶ 21.

{¶12}  Before a juvenile court may terminate parental rights and award permanent custody of a child to a proper moving agency, it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned; orphaned; has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; the child or another child of the same parent has been adjudicated abused, neglected, or dependent three times; or that the child cannot be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D)(1).  R.C. 2151.414(B)(1) and 2151.414(B)(2); *see also In re William S.*, 75 Ohio St.3d 95, 98-99 (1996).  The best interest factors include: the interaction and interrelationships of the child, the wishes of the child, the custodial history of the child, the child's need for permanence and whether that can be achieved without a grant of permanent custody, and whether any of the factors outlined in R.C. 2151.414(E)(7)-(11) apply.  R.C. 2151.414(D)(1)(a)-(e); *see In re R.G.*, 9th Dist. Summit Nos. 24834 and 24850, 2009-Ohio-6284, ¶ 11.  Clear and convincing evidence is that which will "produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established."  (Internal quotations omitted.)  *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 368 (1985), quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶13}  CSB alleged alternative first-prong grounds pursuant to R.C. 2151.414(B)(1)(a) and (e), and the juvenile court found that the agency had met its burden of proof as to both grounds. Although the agency might allege alternative first-prong grounds in support of its motion for permanent custody, it need only prove one.  *In re T.B.*, 9th Dist. Summit Nos. 29560 and 29564, 2020-Ohio-4040, ¶ 11.  In this case, none of the appellants challenge the juvenile court's first-prong findings that the children cannot or should not be returned to either parent within a

reasonable time pursuant to R.C. 2151.414(B)(1)(a), and that the children have been adjudicated abused, neglected, or dependent on three separate occasions pursuant to R.C. 2151.414(B)(1)(e). Accordingly, this Court need not address the juvenile court's first-prong findings. In the interest of fairness to the parties, however, we note that the record supports the juvenile court's finding that all three children had been adjudicated dependent on three separate occasions. As the agency need only prove one of its alternative first-prong allegations, the evidence supports the juvenile court's first-prong finding.

{¶14} CSB further proved by clear and convincing evidence that an award of permanent custody was in the best interest of the children. The children were five, two, and one years old, respectively, when CSB first removed them from Mother's physical custody in 2015. They were in the legal custody of an aunt for two and a half years until the agency again removed them. They were then in Grandmother's legal custody until she informed CSB two and a half years later that she could no longer provide a safe environment for them. The children spent approximately six weeks in Father's temporary custody before Father disrupted that placement. They were in the agency's temporary custody, and placed together in a foster home, for the remaining nine and a half months of the case.

{¶15} Do.C. was diagnosed with autism and anxiety. He continued to wet the bed and engage in some disruptive behaviors throughout the case, although those issues were less severe as time passed. He has an individualized education program at school where he was earning straight A's. When stressed or nervous, Do.C. picks at his skin until he bleeds. Working with a therapist, behavioral specialist, and case manager at Ever Well Community Health ("Ever Well") has helped the child develop better coping skills. De.C. and A.C. do not have any special needs,

although they also engage in counseling through Ever Well to address the trauma associated with their frequent custodial disruptions.

{¶16} The children share a typical sibling bond, at times picking on each other, while at other times defending each other. They are comfortable in their foster home and are bonded with their foster parents. The foster father is the primary caregiver, as the foster mother works outside the home. Do.C. and the foster father have a particularly close relationship. According to the guardian ad litem, all three children describe the foster home as the "best home we've ever had."

{¶17} The children have had the opportunity to visit regularly with Mother who is very affectionate with them. The children often get upset at visits, however, as Mother tends to tell them that they will be returning to Grandmother's home. Grandmother initially joined Mother during visits. She did not interact with the children; rather, Grandmother sat a distance away and watched as Mother engaged with the children. For several months at the end of the case, Grandmother stopped visiting, indicating that she did not feel well. Father consistently arrived late and left early during his weekly visits, so the children had limited interaction with him.

{¶18} The guardian ad litem reported that the children all understand that, while Mother, Father, and Grandmother love them, none of those adults is able to care for them. The children told the guardian ad litem that they did not want to live with Mother, Father, or Grandmother, but instead wished to remain in their foster home. The children specifically did not want to return to Father's girlfriend's home, because they did not like the way she treated them with disrespect. The guardian ad litem opined that permanent custody was in the best interest of the children.

{¶19} After multiple custodial disruptions in their lives, the children need the opportunity for permanence. Neither parent, any prior legal custodian, nor other family member was willing or appropriate to provide a permanent home for the children. Although CSB sought to reunify the

children with their parents or Grandmother, the caseworker testified that the agency concurrently pursued permanent custody "to work both roads at the same time in order to expedite the kids getting a permanent home[,]" given the history of custodial disruptions throughout the children's lives.[1]

{¶20} Mother has a history of abusing substances, including alcohol, methamphetamine, fentanyl, and marijuana. The CSB caseworker referred Mother to Community Health Center ("CHC") for a substance abuse assessment, but Mother failed to obtain the assessment. Mother also refused to submit to drug screens. She sometimes admitted to the caseworker that she had recently used methamphetamine. The caseworker had worked with Mother in the prior 2018 case when Mother experienced an extended period of sobriety. Accordingly, the caseworker was familiar with Mother's behaviors when sober and when using drugs and alcohol. When under the influence, Mother presented as angry, erratic, and loath to accept responsibility for her situation. The caseworker and guardian ad litem both testified as to Mother's angry outbursts, swearing, and shifting blame to CSB for Mother's lack of progress on her case plan objectives.

{¶21} Mother also failed to submit to a mental health assessment despite the caseworker's proposed options to obtain one at either CHC or Ever Well. Mother discussed past trauma with the caseworker but failed to take any steps to address those issues. As for basic needs, the caseworker testified that Mother has not divulged where she is living. Mother has not been employed during the case. In addition, Mother has pending warrants that she indicated she had no plans to resolve. Despite the caseworker's regular discussions with Mother encouraging her to

---

[1] While not in effect at the time of this case below, the legislature has amended R.C. 2151.412(J) to phase in concurrent permanency planning for children to facilitate alternatives should reunification ultimately not be feasible.

engage in services to address the concerns identified by the agency, Mother had not complied with any case plan objectives.

{¶22} Father demonstrated "[m]inimal" compliance with his case plan objectives. Although he participated in in-home services with Ever Well while the children were in his home for a very brief time, he did not continue with those services after the children's removal. Father did not participate in mental health services and failed to develop any skills to stand up to Mother's demands for unauthorized time with the children. Father's girlfriend, who owned the home Father shared with her, refused to allow the children to return. Although Father realized he could provide a home for the children only if he obtained independent housing, he took no steps to do so. Finally, the caseworker testified that she discussed her concern with Father that he was arriving late for and leaving early from every visit to accommodate his girlfriend's schedule. That resulted in reducing Father's 90-minute visits to approximately 30 minutes each week. The caseworker expressed disappointment regarding Father's prioritization, as Father admitted that his girlfriend could wait for him to finish his visits.

{¶23} The evidence also demonstrated that Grandmother was not likely able to provide a safe and stable home for the children. She had struggled with depression for several years. Although she had attained emotional stability after engaging in mental health services with the Bair Foundation prior to receiving legal custody of the children in 2018, her coping skills gradually deteriorated after the children were placed in her care. Accordingly, Grandmother was required to obtain a mental health assessment and follow all recommendations, which included developing parenting skills to address the trauma experienced by the children due to their numerous custodial displacements during their lives, as well as coping skills to stand up to Mother. Grandmother had the opportunity to engage with Ever Well but she failed to pursue that. She obtained a mental

health assessment immediately after the case plan was adopted, but she did not have her first counseling appointment for another three months. It was unclear why she could not obtain an earlier appointment. She could have engaged, however, with one of the service providers from Ever Well who attended every visit, but she declined.

{¶24} Of significant concern to the caseworker was Grandmother's assertion that Mother had moved back into her home and was using drugs. Grandmother told the caseworker that she was afraid because Mother was behaving aggressively. Although the caseworker told Grandmother to call the police and engage in intensive home-based services to boost her self-protection skills to alleviate her fears, Grandmother did not follow that advice. In the end, although she had begun counseling as required by her case plan objectives, Grandmother never demonstrated the ability to set or maintain any boundaries with Mother, one of the major issues that put the children at risk in Grandmother's home.

{¶25} There were no other family members who were willing or able to take placement of the children. Although the aunt who once had legal custody of the children expressed an interest in again providing a home for the children, she did not follow through with her appointment with the caseworker to discuss that option.

{¶26} Based on a thorough review of the record, this is not the exceptional case in which the trier of fact clearly lost its way and committed a manifest miscarriage of justice by terminating the parents' parental rights and awarding permanent custody of Do.C., De.C., and A.C. to CSB. Neither parent addressed the parenting issues that prevented them from being able to provide a safe and stable home for the children. No appropriate relatives or other third parties were available to act as legal custodians for the children. CSB established by clear and convincing evidence that permanent custody was in the best interest of the children. Accordingly, the juvenile court's

judgment terminating Mother's and Father's parental rights and placing Do.C., De.C., and A.C. in the permanent custody of the agency was not against the manifest weight of the evidence.

{¶27}  This Court further rejects the appellants' arguments that the juvenile court erred by failing to grant a six-month extension of temporary custody to allow Grandmother to continue to work to reobtain legal custody of the children.  R.C. 2151.415(D) permits extensions of temporary custody beyond one year only if the extension is in the best interest of the child, there has been substantial progress made towards reunification, and reunification is likely to occur within the period of extension.  It is well settled that, where an award of permanent custody is in a child's best interest, a six-month extension of temporary custody necessarily is not.  *See In re A.S.*, 9th Dist. Summit No. 28743, 2017-Ohio-8984, ¶ 31.

{¶28}  Although Grandmother obtained her mental health assessment and began counseling, she demonstrated no progress in addressing the depression she suffered or her inability to protect the children from Mother's substance abuse, aggression, and controlling behaviors. When Grandmother attended visits, she merely observed and let Mother interact with the children. Grandmother demonstrated that she could not bar Mother from her home.  In fact, after eight months of engaging in services, Grandmother continued to express fear of Mother who had again begun living in Grandmother's home.  The guardian ad litem reported, not only had Grandmother made no effort to address the concern of Mother's interference in Grandmother's household, but also that Grandmother was not expressing a desire for the children's return to her home.  Under the circumstances, there was no evidence of the likelihood that the children could be reunified with Grandmother within the six-month extension period.

{¶29}  Finally, the appellants argue that the juvenile court erred by granting permanent custody because CSB failed to use reasonable reunification efforts.  Specifically, the appellants

argue that CSB's filing of its motion for permanent custody a mere two months after the initial adoption of the case plan necessarily demonstrates the agency's failure to use reasonable reunification efforts. We are mindful of the agency's duty to use reasonable efforts to facilitate a child's reunification with parents unless the juvenile court has expressly relieved the agency of that duty after a hearing pursuant to R.C. 2151.419(A)(2). Moreover, we acknowledge that an early motion for permanent custody might appear to a parent as a means for the agency to avoid its obligation. However, the appellants cite no legal authority for their argument, and this Court finds none. In fact, the legislature has provided the ability for the agency to move for permanent custody at the same time as it has filed its complaint. R.C. 2151.27(C); *see also* Juv.R. 10(D), R.C. 2151.35(A)(1) and (B)(1) (providing that the juvenile court may consider the agency's motion for permanent custody at the initial dispositional hearing).

{¶30} R.C. 2151.419 does not require a reasonable efforts determination at the time of the permanent custody hearing unless the agency has not demonstrated the use of reasonable efforts prior to that time. *In re L.R.*, 9th Dist. Summit Nos. 29266 and 29271, 2019-Ohio-2305, ¶ 14. No party challenged the juvenile court's prior reasonable efforts findings in this case. Accordingly, based on this Court's precedent, the appellants have forfeited the issue except for a claim of plain error. *Id.* at ¶ 18. None of the appellants have developed a plain error argument in this case, and this Court will not do so on their behalf. *See id*. For the above reasons, Mother's, Father's, and Grandmother's combined assignments of error are overruled.

III.

**{¶31}** Mother's sole assignment of error is overruled. Father's two assignments of error are overruled. Grandmother's three assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellants.

BETTY SUTTON
FOR THE COURT

CARR, P. J.
CALLAHAN, J.
CONCUR.

APPEARANCES:

BARBARA J. ROGACHEFSKY, Attorney at Law, for Appellant.

ADAM M. VANHO, Attorney at Law, for Appellant.

JASON D. WALLACE, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and JAQUENETTE S. CORGAN, Assistant Prosecuting Attorney, for Appellee.

ANNETTE POWERS, Guardian ad Litem.