DECISION AND JOURNAL ENTRY
{¶ 1} This consolidated appeal is a challenge to a juvenile court order granting permanent custody of four children to the Summit County Children Services Board. One of the appeals was jointly brought by the mother of all four children and the father of three of the children. The other appeal was brought by one of the children through her guardian ad litem. The parents and the child have filed separate appellate briefs. The parents have challenged the adequacy of the evidence in support of the finding on the first part of the permanent custody test, i.e., that the children could not be placed with either parent within a reasonable time or should not be placed with them. See R.C. 2151.414(B)(1)(a). N.S. has challenged the adequacy of the evidence in support of the finding on the second part of the permanent custody test, i.e., that the evidence does not support the finding that permanent custody is in her best interest. See R.C. *Page 2 2151.414(D). In addition, the parents and the child have both asserted that the trial court decision should be reversed because Children Services failed to file a case plan for adoption when it filed its motion for permanent custody, which they argue is a violation of Section 2151.413(E) of the Ohio Revised Code. This Court has concluded that neither the parents nor the child has demonstrated error by the trial court in regard to its determinations on either part of the permanent custody test. In addition, this Court has concluded that the lack of an objection by any of the appealing parties to the failure of CSB to file a plan for adoption at the time it filed a motion for permanent custody resulted in a forfeiture of this issue.
 I. {¶ 2} Jennifer N. is the mother of all four children. Terry S. is the father of the oldest child, N.S., born October 7, 2002. He voluntarily surrendered his parental rights and is not a party to this appeal. James N. is the father of the other three children: H.N., born October 19, 2004; J.N., born September 18, 2005; and S.N., born March 30, 2007. Jennifer N. and James N. have appealed from the judgment of the trial court. Five-year-old N.S. has separately appealed and seeks reunification with her mother. Because Terry S. voluntarily surrendered his parental rights to N.S., references to the parents are to Jennifer N. and James N., and references to the father are to James N.
 {¶ 3} Children Services first became involved with this family in January 2006, when the parents entered into a voluntary case plan regarding the care of the three oldest children. Based on a lack of progress on the voluntary case plan, the agency filed complaints in juvenile court on August 30, 2006. The agency alleged that the children were dependent and neglected, and sought temporary custody. On December 20, 2006, the children were adjudicated dependent and were placed in the temporary custody of the agency. When the fourth child, S.N., was born, *Page 3 
Children Services also sought temporary custody of her based on allegations of dependency. On July 3, 2007, the parties stipulated to a finding of dependency and to placement of S.N. in the temporary custody of the agency.
 {¶ 4} The case plan adopted by the trial court required both parents: (1) to protect the children and themselves by not allowing sexual offenders or individuals with criminal backgrounds to live in their home, and by not allowing strangers to watch their children; (2) to successfully complete a parenting skills program that focused on age-appropriate supervision for developmentally delayed and/or handicapped children; (3) to participate in psychological evaluations and comply with any treatment recommendations in order to insure that they can respond to their children's behavior in a safe, effective manner; (4) to seek employment to meet the basic needs of their children; and (5) to participate in weekly visitation on a regular basis and conduct themselves in an appropriate manner.
 {¶ 5} The father was additionally and separately required: (1) to participate in anger management classes and/or individual counseling in an effort to avoid verbal abuse and aggression; (2) to obey all laws and attend all court appointments (he was on probation and had been adjudicated a sexual offender); and (3) to complete a chemical dependency assessment. The mother was additionally and separately required to complete the Stop the Violence Cycle Program, to develop a safety plan to stop future victimization, and to increase her understanding of the dynamics of domestic violence and the impact it has had on her and her family.
 {¶ 6} When the parents initiated divorce proceedings, the trial court ordered appropriate changes in the case plan. The court also permitted the attorney who had represented both parents to withdraw and ordered that separate attorneys be appointed for each of them. By the time of the hearing, however, the parents had cancelled their plans to divorce. An attorney was also *Page 4 
appointed for N.S. due to an apparent conflict between the child's wishes and the guardian ad litem's recommendations.
 {¶ 7} The case proceeded to hearing on the agency's motion for permanent custody; the mother's motions for a six-month extension, custody with protective supervision, and dismissal of the permanent custody action; and N.S.'s motion for legal custody to her mother, or, alternatively, an extension of temporary custody. On February 8, 2008, the trial court granted Children Services' motion for permanent custody of all four children and denied all other dispositive motions. The parents and N.S. have each assigned two errors.
 II. {¶ 8} N.S.'s first assignment of error and the parents' second assignment of error are both arguments that the trial court incorrectly found that the evidence supported an order of permanent custody. Before a juvenile court may terminate parental rights and award permanent custody of a child to a proper moving agency it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned, orphaned, has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period, or that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under Section 2151.414(E) of the Ohio Revised Code; and (2) that the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under Section 2151.414(D) of the Revised Code. See R.C. 2151.414(B)(1) and 2151.414(B)(2); see also,In re William S., 75 Ohio St. 3d 95, 99 (1996). Clear and convincing evidence is that which will "produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established."In re Adoption of Holcomb, 18 Ohio St. 3d 361, 368 (1985) (quotingCross v. Ledford, 161 Ohio St. 469, paragraph three of the syllabus (1954)). *Page 5 
 A. THE CHILDREN COULD NOT BE RETURNED TO THE PARENTS WITHIN A REASONABLE TIME OR SHOULD NOT BE RETURNED TO THE PARENTS {¶ 9} The trial court found that the first prong of the permanent custody test was satisfied because the children could not be returned to either parent within a reasonable period of time and should not be returned to their care. Additionally, the trial court found that the second prong of the permanent custody test was satisfied because permanent custody was in the best interests of all four children. The parents have challenged the first finding as being unsupported by clear and convincing evidence and against the weight of the evidence, while N.S. has challenged the second finding on the same grounds. Affirmative findings on both prongs are required in support of a judgment of permanent custody. R.C. 2151.414(B)(1).
 {¶ 10} Section 2151.414(E) of the Revised Code requires the trial court to enter a finding that the children cannot be placed with either parent within a reasonable time or should not be placed with either parent if the court determines that one of the factors set forth in that section exists for each of the children's parents. Accordingly, the trial court determined that despite reasonable case planning and diligent efforts on the part of the agency, the parents had failed to substantially remedy the conditions that required removal of the children. See R.C. 2151.414(E)(1). The trial court also found that the parents demonstrated a lack of commitment towards the children or a lack of ability to follow through on their responsibilities. See R.C.2151.414(E)(4). As noted above, Terry S. had voluntarily surrendered his parental right to N.S., and the child could not, therefore, be placed with him.
 {¶ 11} In factual support of those conclusions, the trial court found that the parents were unable to provide a home for the children and that it was not reasonable to believe they could do so within the period of the requested extension of temporary custody. The trial court also found *Page 6 
that the parents had demonstrated little insight into either their own relationship or the needs of the children. The parents had failed to visit the children consistently and had provided no support for them. They had failed to obtain employment or to maintain a suitable home. At the time of the permanent custody hearing, the stability of the parents' personal relationship was in question. During the course of these proceedings, the two had separated, a divorce action was filed, and the mother made plans to marry another man. Later, the mother cancelled her plans to marry the other man, and the parents apparently planned to remain married. At the time of the hearing, however, the parents were living apart. The trial court also noted that H.N. and J.N. have special needs that require committed, consistent parenting and a regimen of therapy. According to the trial court, the parents do not appear to have any insight into the needs of the children, nor do they appear to have the ability to meet those needs. The trial court found that neither parent has demonstrated the ability to consistently follow a schedule for their own responsibilities.
 {¶ 12} In their appellate brief, the parents have made several fact-based claims in an attempt to challenge the conclusion of the trial court. None of these claims is persuasive. In some cases, the parents' assertions are unsupported by the record, and, in others, they rely on things taken out of context. On the whole, they do not demonstrate any error by the trial court when it found that the children could not be placed with either parent within a reasonable time or that they should not be placed with a parent.
 {¶ 13} First, the parents claim that J'Ann Shand, the Children Services caseworker assigned to this case, testified that she had "no concerns on how the Mother would feed the children when they were in her home." This is not an accurate representation of Ms. Shand's testimony. A fair reading of the transcript indicates, instead, that Ms. Shand had no such *Page 7 
concerns at the time the parents agreed to work on a voluntary case plan, but that she did have concerns later. In particular, Ms. Shand mentioned that the mother was putting coffee or tea into the bottle of nine-month-old J.N.
 {¶ 14} Second, the parents have asserted that "during the Juvenile Court adopted case plan, the kids looked better." This Court assumes the parents suggest, by this statement, that the children were better cared for while they were in the custody of their parents. The referenced part of the record, in fact, indicates that after the parents removed all the other people that they had been allowing to live in their home, the children and their clothing were cleaner and looked better. The record further reveals, however, that the period when the additional people were out of the house lasted "maybe a month."
 {¶ 15} Third, the parents have argued that the mother made medical appointments for the children and then kept those appointments. The referenced part of the record indicates that the mother did keep one appointment, but this occurred with the specific hands-on help and careful follow-up of the caseworker. Immediately prior to that appointment and the reason for the careful assistance of the caseworker, the mother had missed three appointments for J.N. Caseworker Shand testified that, according to the doctor's office, J.N. was behind in his shots and the mother would schedule appointments and then miss them.
 {¶ 16} Other witnesses confirmed the parents' frequent failures in keeping a schedule. For example, the guardian ad litem testified that there had been concern about missed medical appointments prior to the removal of the children from the home. Mother's therapist, Susan Hensley, testified that the mother kept only four appointments with her in the course of a year, when monthly appointments were the goal. The parents had also been inconsistent in attending visitation with the children, and were dropped from the schedule three or four times due to *Page 8 
repeatedly missing scheduled visitations. The guardian ad litem did not believe the mother would be able to get the children to their appointments because she failed to keep her own appointments. This issue has significance in light of the special needs of J.N. and H.N. and the multiple service providers they see. J.N. has asthma, attends two schools and receives speech, occupational, and physical therapy. H.N. receives speech, occupational, and physical therapy as well. N.S. and S.N. attend day care or Head Start, but have no special needs identified at this time.
 {¶ 17} Fourth, the parents have claimed that the mother kept the house clean. The cited parts of the record do not support that conclusion. They indicate, instead, that the house was cleaner and neater immediately after the parents removed all the other people they had been permitting to stay in their home, but that the condition of the home only improved "for a while."
 {¶ 18} Fifth, the parents have claimed the caseworker testified that the mother had a good relationship and was well-bonded to both N.S. and H.N. Ms. Shand did testify that the mother had a good relationship with N.S., but the caseworker nevertheless concluded that permanent custody was in N.S.'s best interest. Upon questioning, Ms. Shand specifically denied that the mother was bonded to H.N. Moreover, she stated that the child responded no differently to his mother than to anyone else who paid attention to him. She stated that the mother never did activities with H.N. during visitation, and that the child "would just go off and do his own thing" instead. Ms. Shand further testified that the mother was not bonded to either of the other two children either.
 {¶ 19} Sixth, the parents have asserted that the caseworker believed that everything remaining on the mother's case plan could be completed within a six-month extension and that an extension would be beneficial to the parents and the children. The record demonstrates that *Page 9 
the caseworker testified that it would be possible for the parents to complete their case plan within six months "if they would work consistently," but she specifically stated that she did not believe the parents would be able to complete the objectives of the case plan within six months. She also explained that the benefit of an extension would be that the agency would have more opportunity to observe the parents and children together, permitting the agency to determine whether the parents would interact in a positive manner with the children and give them more time for bonding. When asked whether a six-month extension would be in the best interest of the children, however, the caseworker specifically stated that it would not. She explained that the parents have had the same objectives since August 2006, and before that they had a voluntary case plan. She stated that they have had sufficient time to address those issues, and they still cannot offer the children stability in terms of a home environment or their own relationship. Ms. Shand reiterated her belief that permanent custody was in the best interest of the children.
 {¶ 20} The guardian ad litem also recommended that the request for a six-month extension should be denied. She based her opinion on the fact that the parents had many opportunities to address their case plan over the previous 15 months, but had not taken advantage of those opportunities. Furthermore, she believed the parents had failed to address the need for stable housing, despite her repeated urgings, and had continued to demonstrate poor parenting skills and a lack of supervision at the visitation center.
 {¶ 21} Finally, the parents have claimed that the guardian ad litem said that severing the relationship between N.S. and her mother would have a negative impact on N.S. The guardian ad litem did state that terminating this relationship would have a negative impact and be hard for N.S., yet, knowing this, she nevertheless concluded that permanent custody was in the child's *Page 10 
best interest. She reached that conclusion based on the child's age and her opinion about the situation in which the child could thrive and have a stable, loving home.
 {¶ 22} The factual claims made by the parents do not demonstrate that the trial court erred in concluding that the children cannot be placed with a parent within a reasonable time or should not be placed with a parent. Furthermore, the parents have not demonstrated that the trial court erred in finding either that the parents failed to remedy the conditions that required the removal of the children or that the parents failed to demonstrate a commitment to the children. The parents' second assignment of error is overruled.
 B. PERMANENT CUSTODY WAS IN THE BEST INTEREST OF N.S. {¶ 23} N.S. has challenged the finding of the trial court on the second prong of the permanent custody test, i.e., that permanent custody was in the best interest of N.S. When making a best interest determination, a juvenile court must consider: (1) the child's personal interactions and relationships; (2) the child's wishes regarding placement; (3) the custodial history of the child; (4) whether there are appropriate alternatives to permanent custody, and (5) whether any of the factors in Section 2151.414(E)(7) to (11) of the Ohio Revised Code apply. R.C. 2151.414(D). Although the trial court is not precluded from considering other relevant factors, the statute explicitly requires the court to consider all the enumerated factors. See In re Smith, 9th Dist. No. 20711, 2002 WL 5178 at *3; see also, In re Palladino, 11th Dist. No. 2002-G-2445, 2002-Ohio-5606, at ¶ 24. Further, the Ohio Supreme Court has directed that no one factor is to be given greater weight or heightened significance over another. In re Schaefer,111 Ohio St. 3d 498, 2006-Ohio-5513, at ¶ 56.
 {¶ 24} In regard to the first best interest factor, N.S. has argued that she shared a loving bond with her mother and has cited testimony that a grant of permanent custody would have a *Page 11 
negative impact on the child. N.S. has also asserted that she has a bond with sibling H.N. and that they might not be placed together in an adoptive home. The record affirms that there was a bond between mother and N.S., but the record demonstrates that N.S. was bonded to her foster family as well. Furthermore, while the guardian ad litem recognized that it might be difficult for N.S. to be separated from her mother, she nevertheless recommended permanent custody as being in the child's best interest. In addition, while N.S. has a bond with H.N., with whom she had been placed, she had little connection with her other two siblings, who were placed in a separate foster home. Also, none of the other three siblings had a significant bond with either parent. There is no evidence of a significant relationship between the children and other relatives.
 {¶ 25} The second best interest factor relates to the wishes of the child. Five-year-old N.S. expressed a desire to the guardian ad litem to return to her mother's custody. This statement was reflected in the record. The child repeated this once in the presence of the mother and another time while alone with the guardian ad litem. On appeal, N.S. has pointed to this as a factor weighing in favor of returning her to the custody of her mother. Although the guardian ad litem admitted that N.S. said she wanted to be returned to her mother, the guardian felt that her statements were made at the direction and coercion of her mother. She explained that the mother repeatedly told N.S. to tell the guardian ad litem what they had talked about during visitation. The child refused and said that she did not want to tell the guardian, but eventually told the guardian ad litem: "I want to go home. Mommy told me to tell you that." In the end, the guardian ad litem recommended permanent custody as being in the best interest of the child. *Page 12 
 {¶ 26} The third best interest factor requires consideration of the custodial history of the child. N.S. had been in the temporary custody of Children Services for approximately 17 months.
 {¶ 27} The fourth best interest factor requires consideration of whether a legally secure placement for N.S. could be achieved without a grant of permanent custody to the agency. N.S. has argued that her mother could complete her case plan objectives within a six-month extension. She has pointed out that N.S. is not a special needs child and that her mother would not require extraordinary skills or training to be able to parent her.
 {¶ 28} The caseworker indicated that, although completion of the case plan within six months was theoretically possible, she did not believe the parents would be able to complete the objectives of the case plan within six months. The child's mother was still not able to provide a home for her child. The trial court found no reason to believe that the mother would be able to remedy the conditions that caused the removal of the children even within the time of an extension. There was evidence before the trial court that N.S. was in need of a legally secure placement and that it could not be obtained without a grant of permanent custody. The trial court also pointed out that the permanent custody hearing had been continued for three months and the parents had received the benefit of a de facto extension by that action, yet, they failed to make any progress during that time. There were no relatives who could provide suitable care for the child.
 {¶ 29} The arguments presented by N.S. do not demonstrate error by the trial court in finding that permanent custody was in the best interest of the child. The evidence clearly and convincingly supports a conclusion that permanent custody was in the best interest of N.S. N.S.'s first assignment of error and the parents' second assignment of error are overruled. *Page 13 
 III. {¶ 30} The first assignment of error by the parents and the second assignment of error by N.S. is that Children Services did not file a case plan including a plan for adoption at the time it filed its motion for permanent custody. In making this argument, they have relied on the language in Section 2151.413(E) of the Ohio Revised Code:
 "Any agency that files a motion for permanent custody under this section shall include in the case plan of the child who is the subject of the motion, a specific plan of the agency's actions to seek an adoptive family for the child and to prepare the child for adoption."
R.C. 2151.413(E). This section requires an agency that moves for permanent custody to include a plan for adoption in the child's case plan. The parents and the child claim that such a plan must be filed at the time the motion for permanent custody is filed. The agency filed a plan for adoption on February 6, 2008, two days prior to the day the trial court issued its decision granting the agency permanent custody of all four children.
 {¶ 31} The parents have cited In re T.R., 2d Dist. No. 22291, 2007-Ohio-6593, motion to certify conflict allowed,117 Ohio St. 3d 1456, 2008-Ohio-1635, in support of their argument. In re T.R. is currently before the Ohio Supreme Court on the allowance of a motion to certify conflict. The actual question certified in that case is: "Does R.C. 2151.413(E) require a children services board to file an adoption plan with the court, prior to the court granting permanent custody of a minor child." The precise question before the Ohio Supreme Court, therefore, is framed differently than the issue raised by the parents' argument.
 {¶ 32} In any event, it is unnecessary for this Court to reach the merits of this question because neither the parents nor N.S. objected to the alleged failure to timely file a plan for adoption during the trial court proceedings. Absent plain error, the failure to enter a timely objection before the trial court constitutes a forfeiture of the alleged error for purposes of appeal. *Page 14 State v. Payne, 114 Ohio St. 3d 502, 2007-Ohio-4642, at ¶ 23. Having failed to bring this matter to the attention of the trial court at a time when the alleged error could have been corrected, the parents and N.S. failed to preserve the issue for appeal.
 {¶ 33} The parents have also argued that the decision of the juvenile court was void because the trial court was deprived of subject matter jurisdiction by the failure of the agency to timely file the plan for adoption. If this argument had merit, the parents would be permitted to assert the error at any point in the proceedings, notwithstanding their failure to raise the alleged error in the trial court. This is because a lack of subject matter jurisdiction may be raised at any time. State v.Swiger, 125 Ohio App.3d 456, 461 (1998), abrogated on other grounds byState v. Hutton, 100 Ohio St. 3d 176, 2003-Ohio-5607. The argument, however, is without merit. "Subject matter jurisdiction focuses on the court as a forum and on the case as one of a class of cases, not on the particular facts of a case" Id. at 462. The juvenile court has exclusive original jurisdiction over children who are alleged to be neglected or dependent, R.C. 2151.23(A)(1); and also has exclusive original jurisdiction to determine the custody of any child not a ward of another state court. R.C. 2151.23(A)(2). State ex rel. Brooks v. O'Malley,117 Ohio St. 3d 385, 2008-Ohio-1118, at ¶ 8. The parents have not argued that the juvenile court did not have subject matter jurisdiction of this permanent custody case; rather, they have argued that the failure of the agency to file a plan for adoption with their motion for permanent custody deprived the juvenile court of subject matter jurisdiction.
 {¶ 34} The allegation of a failure to include a plan for adoption when the motion for permanent custody is filed does not deprive the juvenile court of its subject matter jurisdiction over a case concerning the custody of children alleged to be dependent or neglected. As explained in Swiger, in addition to personal jurisdiction and subject matter jurisdiction, there is a *Page 15 
third type of jurisdiction that "encompasses the trial court's authority to determine a specific case within that class of cases that is within its subject matter jurisdiction." Swiger, 125 Ohio App. 3d at 462. "It is only when the trial court lacks subject matter jurisdiction that its judgment is void; lack of jurisdiction of the particular case merely renders the judgment voidable." Id. While a party may challenge a void judgment at any time, it may challenge a voidable judgment only in accordance with the principles of appellate procedure, such as forfeiture of error and the plain error doctrine. Payne, 2007-Ohio-4642, at ¶ 22-30.
 {¶ 35} Any error regarding the failure to file a plan for adoption can only render the judgment of permanent custody voidable. Because neither the parents nor N.S. timely objected and have not argued plain error, they have failed to preserve the issue for appeal and forfeited any error. The parents' first assignment of error and N.S.'s second assignment of error are overruled.
 IV. {¶ 36} The parents' and N.S.'s assignments of error are overruled. The judgment of the Summit County Common Pleas Court, Juvenile Division, is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27. *Page 16 
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to appellants.
 SLABY, P. J., WHITMORE, J. CONCUR
 *Page 1