[Cite as *In re M.T.B.*, 2013-Ohio-4998.]

STATE OF OHIO )
             )ss:
COUNTY OF SUMMIT )

IN RE: M.T-B.
     L.M.
     P.S.
     P.S.
     P.S.

IN THE COURT OF APPEALS
NINTH JUDICIAL DISTRICT

C.A. No.     26866

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE Nos.   DN 12-08-0538
                 DN 12-08-0539
                 DN 12-08-0540
                 DN 12-08-0541
                 DN 12-08-0542

DECISION AND JOURNAL ENTRY

Dated: November 13, 2013

BELFANCE, Judge.

{¶1}　Appellant, Marquita T. ("Mother"), appeals from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that adjudicated three of her children abused, neglected and dependent; adjudicated her other two children dependent; and returned all five children to her legal custody under an order of protective supervision by Summit County Children Services Board ("CSB"). For the reasons that follow, this Court affirms.

I.

{¶2}　Mother is the natural mother of five children: M.T-B., born March 31, 1995; L.M., born June 15, 1999; P.S., born July 7, 2007; and twins who also have the initials P.S., born May 31, 2010. The children's fathers are not parties to this appeal.

{¶3} At the beginning of this case, Mother was living in a home with her children and the father of the three youngest children. The father had been the subject of an ongoing narcotics investigation by a multi-jurisdictional task force. On May 18, 2012, police officers executed a search warrant at the family home. During the course of their search, the officers found a coffee grinder with heroin residue, as well as a digital scale and items used to cut and package heroin, many of which also contained heroin residue. They also found a large amount of cash hidden in a shoe and a semi-automatic pistol hidden in a closet. Additional drug paraphernalia was found in the attached garage, which contained powdery residue that was confirmed to be cocaine. Mother and the father were arrested and taken to jail.

{¶4} Mother's young twins and her oldest child were at the home during the search and were removed from Mother's custody pursuant to Juv.R. 6. Mother's other two children were not taken into custody at that time because they were not present in the home. L.M., who was at the home of his paternal grandfather, and P.S., who was at the home of her paternal grandmother, were taken into the emergency custody of CSB the next day. All five children were later placed in the emergency temporary custody of a maternal great-grandmother.

{¶5} The matter proceeded to an adjudicatory hearing before a magistrate. The three children who had been present during the police search were adjudicated abused, neglected, and dependent. The other two children were adjudicated dependent. Mother filed timely written objections, which were later overruled by the trial court. The trial court adopted the magistrate's adjudicatory decision and entered judgment.

{¶6} Although Mother had been charged with illegal manufacture of drugs, possession of criminal tools, and possession of cocaine, she entered a guilty plea to lesser charges and was placed on probation. By the time the matter was scheduled for disposition, Mother's criminal

charges had been resolved, and the father of the youngest three children was no longer living with her. All parties had agreed before the hearing that the children should be returned to Mother's custody under an order of protective supervision by CSB. On November 20, 2012, the magistrate entered a dispositional decision in accordance with that agreement. That same day, Judge Hoffman, a visiting judge, signed a journal entry adopting the magistrate's decision. Mother filed timely objections to the magistrate's decision. The presiding judge of the juvenile court overruled her objections and entered judgment, placing the children in her legal custody under an order of protective supervision. Mother appeals and raises four assignments of error, which will be addressed out of order to facilitate review.

ASSIGNMENT OF ERROR II

THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN DENYING MOTHER'S MOTION TO DISMISS THE COMPLAINT ON L.M. FOR FAILING TO PERFECT SERVICE ON THE FATHER.

{¶7} This Court will begin by addressing Mother's second assignment of error because it challenges the trial court's jurisdiction to adjudicate one of the children. On appeal, Mother argues that service of the complaint on the father of L.M. was defective for several reasons. Even if we were to assume that Mother had standing to raise the issue of defective service on the father, she was required to raise the issue in a timely manner in the trial court. Personal jurisdiction is waived if not raised through the first pleading, motion, or appearance in the trial court. *In re J.P.*, 9th Dist. Summit No. 23937, 2008-Ohio-2157, ¶ 7. Moreover, in juvenile proceedings, any "objections based on defects in the institution of the proceeding" must be raised and heard before the adjudicatory hearing. Juv.R. 22(D)(1). At the time this case commenced, Juv.R. 22 required that all pre-hearing motions be filed by the earlier of seven days before the

adjudicatory hearing or ten days after the appearance of counsel. Former Juv.R. 22(E) (effective July 1, 2012, the rule now requires that such motions be filed by the later of the two dates).

{¶8} Service was attempted on L.M.'s father via publication, which was fully reflected on the court's docket. Two weeks later, Mother filed a timely motion to dismiss the children's complaints. The issues she asserted pertained solely to her children's rights to an attorney, a guardian ad litem, and to be served with the complaints. Her motion included no challenge to the sufficiency of service upon the father of L.M. By filing a motion to dismiss the complaints that failed to raise the issue of improper service upon the father, Mother waived that issue before the trial court. *See, e.g., Gliozzo v. Univ. Urologists of Cleveland, Inc.*, 114 Ohio St.3d 141, 2007-Ohio-3762, ¶ 8-9; *State ex rel. Ragozine v. Shaker*, 96 Ohio St.3d 201, 2002-Ohio-3992, ¶ 20. Because Mother failed to timely raise the issue of the court's personal jurisdiction over the father of L.M., this Court will not address the merits of her arguments. Her second assignment of error is overruled.

ASSIGNMENT OF ERROR I

THE TRIAL COURT COMMITTED REVERSIBLE ERROR AND LACKED JURISDICTION IN ISSUING THE DISPOSITIONAL JOURNAL ENTRY WHEN THE SIGNING JUDGE HAD NO AUTHORITY TO SIGN IT.

{¶9} The dispositional hearing was held before a magistrate. On November 20, 2012, the magistrate issued a decision that the children be placed in the legal custody of Mother under an order of protective supervision. That same day, Judge Hoffman, a visiting judge, adopted the magistrate's decision, pending the filing of timely objections. Mother does not dispute that Judge Hoffman had been properly appointed to hear matters in the Summit County Juvenile Court for a limited period of time.

{¶10} Mother later filed timely objections, which included an objection to Judge Hoffman adopting the magistrate's decision. She asserted that, because Judge Hoffman's appointment period had expired, he lacked authority to adopt the magistrate's decision. Mother's objections were reviewed by Judge Linda Teodosio, the presiding juvenile court judge. On April 9, 2013, Judge Teodosio overruled Mother's objections and independently entered a dispositional order.

{¶11} On appeal, Mother again argues that Judge Hoffman lacked authority to sign the November 20 dispositional order. Even if we were to accept Mother's argument that Judge Hoffman lacked authority to sign the November 20 order adopting the magistrate's decision, Mother has failed to demonstrate that any defect in that order affected the authority of the trial court to enter its final order of disposition on April 9, 2013. Mother's argument is based on a mistaken legal premise that the trial court's authority to enter the April 9 post-objection order of disposition required that it first issue a pre-objection ruling on the magistrate's decision.

{¶12} Despite Mother's argument to the contrary, Juv.R. 40 does not require that a trial court conduct two separate levels of review of a magistrate's decision. Specifically, there is no requirement that the trial court conduct a pre-objection review of the magistrate's decision. Juv.R. 40(D)(4)(b) authorizes the trial court to adopt or reject a magistrate's decision whether or not objections are filed. Juv.R. 40(D)(4)(e)(i) further provides that the court "may enter a judgment either during the fourteen days permitted by Juv.R. 40(D)(3)(b)(i) for the filing of objections to a magistrate's decision or after the fourteen days have expired." As the 2006 Staff Notes to Juv.R. 40(D) emphasize, Juv.R. 40(D)(4)(e)(i) "permits," but does not require, the trial court to enter judgment during the 14-day objection period. In other words, it was not necessary that the trial court issue a pre-objection order on the magistrate's decision.

{¶13} Mother later filed written objections, which required the trial court to "undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law." Juv.R. 40(D)(4)(d). Judge Teodosio, who actively presides over the Summit County Juvenile Court, conducted the independent review of Mother's objections and signed the April 9, 2013 order that overruled the objections and independently entered a dispositional judgment. Aside from disagreeing with Judge Teodosio's conclusions, Mother does not dispute that Judge Teodosio conducted an appropriate review of her objections to the magistrate's decision and issued a proper judgment. Consequently, Mother has failed to demonstrate that any error in the November 20 order signed by Judge Hoffman affected the jurisdiction or validity of the trial court's ultimate dispositional order filed on April 9, 2013. Mother's first assignment of error is overruled.

## ASSIGNMENT OF ERROR III

THE TRIAL COURT'S FAILURE TO ISSUE WRITTEN FINDINGS OF FACT STATING THE REASONS SUPPORTING ITS "REASONABLE EFFORTS" DETERMINATIONS CONSTITUTES PREJUDICIAL AND REVERSIBLE ERROR AS A MATTER OF LAW.

{¶14} Mother's third assignment of error is that the trial court failed to comply with the requirement of R.C. 2151.419 to make reasonable efforts findings after the adjudicatory and dispositional hearings. R.C. 2151.419(A)(1) required the trial court to determine whether CSB had made reasonable efforts "to eliminate the continued removal" of the children from their home "or to make it possible for [them] to return safely home" "at any hearing held pursuant to section 2151.28, division (E) of section 2151.31, or section 2151.314, 2151.33, or 2151.353 of the Revised Code at which the court removes a child from the child's home or continues the removal of a child from the child's home[.]" The hearings listed include the adjudicatory and dispositional hearings. *See* R.C. 2151.419(A)(1); *In re C.F.,* 113 Ohio St.3d 73, 2007–Ohio–

1104, ¶ 41. R.C. 2151.419(B)(1) further provides that, "[a] court that is required to make a [reasonable efforts determination], shall issue written findings of fact setting forth the reasons supporting its determination."

{¶15} The children were initially removed from Mother's custody and placed in the emergency temporary custody of a maternal great-grandmother. Following the adjudicatory hearing, the magistrate ordered that they remain in that emergency placement. Although the magistrate found that CSB had made reasonable efforts to prevent the continued removal of the children from Mother's custody, he did not articulate the specific efforts made by the agency. *See* R.C. 2151.419(A)(1). Through her written objections to the magistrate's adjudicatory decision, however, Mother raised three specific issues, none of which included the magistrate's failure to explain the factual basis for his reasonable efforts finding. Because Mother failed to raise the issue through her objections and does not argue plain error on appeal, she has failed to preserve the issue for appellate review. Juv.R. 40(D)(3)(a)(iv). As to the adjudicatory decision, therefore, we do not reach the merits of her argument.

{¶16} Mother did preserve this issue for appeal through a timely objection to the magistrate's decision following the dispositional hearing. In overruling Mother's objection on this basis, however, the trial court emphasized that R.C. 2151.419(A)(1) requires the trial court to make a reasonable efforts determination after the enumerated hearings only if "the court removes a child from the child's home or continues the removal of a child from the child's home." The dispositional order did not continue the removal of the children from Mother's home because it ordered that they be returned to her legal custody under an order of protective supervision. Because the trial court's dispositional order did not continue the children's prior removal from the home, the trial court was not required to make reasonable efforts findings

under R.C. 2151.419(B)(1). *Compare In re J.G.*, 9th Dist. Wayne No. 12CA0037, 2013-Ohio-417, ¶ 36 (holding that detailed reasonable efforts findings were required in adjudicatory and dispositional orders because trial court continued the child's removal from the home). Mother's third assignment of error is overruled.

ASSIGNMENT OF ERROR IV

THE JUVENILE COURT COMMITTED REVERSIBLE ERROR WHEN IT FOUND BY CLEAR AND CONVINCING EVIDENCE THAT TWO OF THE CHILDREN WERE DEPENDENT UNDER R.C. 2151.04(C) BECAUSE THAT FINDING WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶17} Mother's final assignment of error challenges the trial court's adjudication of L.M. and the older P.S. as dependent children. She does not dispute that the evidence supported the trial court's adjudication of the other three children as abused, neglected, and dependent because they were present in the home when the drugs and paraphernalia were found. Mother argues that the trial court lacked evidence to support its dependency adjudication of L.M. and the older P.S., however, because they were not in the home during the search.

{¶18} L.M. and P.S. were adjudicated dependent pursuant to R.C. 2151.04(C), which defines a dependent child as any child "[w]hose condition or environment is such as to warrant the state, in the interests of the child, in assuming the child's guardianship[.]" The "environment" at issue here was the family home. Despite Mother's assertion to the contrary, there was no evidence presented at the adjudicatory hearing that these children lived with relatives. The intake caseworker testified that all five children lived in Mother's home but, at the time of the search, L.M. and the older P.S., each of whom have different fathers, were at the homes of their respective paternal grandparents. They were merely visiting relatives and, but for the intervention of the police and CSB, they would have returned to the home in which heroin, cocaine, and drug mixing, weighing, and packaging equipment and supplies had been found.

{¶19} A dependency adjudication under R.C. 2151.04(C) based on an unsafe home environment should "look to environmental elements that are adverse to the normal development of children." *In re M.O.*, 9th Dist. Summit No. 25312, 2010-Ohio-5107 ¶ 7. Although Mother suggests that this Court has focused only on the "extreme filth" of a home, that is one example of an unsafe home environment. This Court has also emphasized that severe health and safety concerns warrant state intervention. *See id.*

{¶20} One of the officers who participated in the drug raid, a 17-year veteran of the Akron Police Department, testified about his extensive experience investigating and conducting raids of suspected narcotics operations. Based on that experience, the officers concluded that the equipment and packaging found in Mother's home, as well as the large sum of cash and semi-automatic weapon, gave them probable cause to believe that heroin and cocaine were being packaged for sale in that home. He testified that there were obvious risks to the children posed by the drug-laden items themselves, some of which were within access of the children. The officer further explained his concern that, because of the illegal nature of the narcotics business and the large amounts of cash involved, the home was also at risk of targeted thefts and other potentially violent crimes. The discovery of a semi-automatic weapon in the home added to his concern about the potential for violent crimes.

{¶21} The temporary absence of L.M. and the older P.S. from Mother's home had no bearing on whether they were dependent under R.C. 2151.04(C) under the facts of this case and Mother has cited no authority to convince us otherwise. There is no language in the statute to require that the children actually be present in their home at a particular moment to authorize an agency to establish that they are dependent under R.C. 2151.04(C). Given that investigations of unsafe and unsanitary homes will often occur when one or more of the children is at school or

otherwise absent from the home, it would be unreasonable to construe R.C. 2151.04(C) to require that the agency wait for children to return to an unsafe environment before it had authority to intervene to protect them. *See, e.g., In re B.W.*, 9th Dist. Medina No. 12CA0016–M, 2012-Ohio-3416, ¶ 13-14.

{¶22} Given the evidence before the trial court about the unsafe home environment where L.M. and P.S. lived with Mother and their siblings, Mother has failed to demonstrate that their dependency adjudication was against the manifest weight of the evidence. Mother's fourth assignment of error is overruled.

### III.

{¶23} Mother's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

EVE V. BELFANCE
FOR THE COURT

MOORE, P. J.
WHITMORE, J.
CONCUR.

APPEARANCES:

NEIL P. AGARWAL, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and RICHARD S. KASAY, Assistant Prosecuting Attorney, for Appellee.

KANI HIGHTOWER, Attorney at Law, for Appellee.

SALLY PRENTICE, Guardian ad Litem.