[Cite as *In re J.A.*, 2020-Ohio-4677.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

IN RE: J.A.
      R.P.

C.A. No.     29462

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE Nos.    DN 18 07 0602
                DN 18 07 0603

DECISION AND JOURNAL ENTRY

Dated: September 30, 2020

---

CARR, Judge.

{¶1}    Appellant Mother appeals the judgment of the Summit County Court of Common Pleas, Juvenile Division, that adjudicated her child R.P. abused and dependent and her child J.A. dependent. This Court affirms in part, reverses in part, and remands.

I.

{¶2}    Mother and Father are the biological parents of J.A. (d.o.b. 2/3/13) and R.P. (d.o.b. 9/18/17). The parents were never married and do not live together. In the summer of 2017 when Mother was pregnant with R.P., she and J.A. moved from Ohio to North Carolina to stay with an aunt. R.P. was born prematurely at 29 weeks' gestation. It was a difficult and prolonged birth, leaving the baby significantly bruised over much of her body. Mother admitted she had used marijuana during her pregnancy to ease severe bouts of morning sickness, so R.P. tested positive for THC at birth. Accordingly, the local child protective services agency opened a case regarding Mother and her children. Due to medical issues stemming from prematurity, R.P. remained in the

hospital NICU for the first two months of her life. By the time the child was released, the North Carolina agency had closed its case, and Mother was able to bring R.P. home.

{¶3} At the end of December 2017, Mother brought the children to Ohio. They all stayed in the home of the children's maternal grandfather. On January 8, 2018, Mother left J.A. with Father and took R.P. to Aultman Hospital because the baby was congested, feverish, and had a bulge in her groin area. While providing healthcare for R.P., the hospital discovered that the infant had a broken rib. After staying at Aultman for at least eight hours without receiving any treatment or answers regarding the child, Mother left with R.P. The following day, Mother took the infant to Akron Children's Hospital ("ACH") in hopes of getting the necessary treatment for the child.

{¶4} Mother told ACH staff that she had taken R.P. to Aultman the day before. ACH took additional images of the child. After confirming the broken rib, ACH performed a head CT scan per their protocol whenever a child under the age of six months presents with a rib fracture. The hospital ordered an MRI based on the results of the CT scan and discovered that R.P. also had a subdural hematoma. The emergency staff referred R.P. to the Child at Risk Evaluation ("CARE") Center based on suspicions of abuse due to the child's injuries.

{¶5} After an evaluation in the CARE Center, the hospital's division director of child abuse prevention and child protection diagnosed R.P. as a victim of abuse. ACH made a referral to Summit County Children Services Board ("CSB" or "the agency"), which removed both R.P. and J.A. from the parents' physical custody and filed complaints alleging that R.P. was an abused and dependent child and that J.A. was a dependent child. Because adjudication and initial disposition could not be completed within the statutory 90-day period, the agency dismissed and refiled the complaints. The agency dismissed and refiled the complaints a second time for the same reason. This case involves the third set of complaints involving the children.

{¶6} By the time the juvenile court held an adjudicatory hearing, the children had been in the emergency temporary custody of CSB for almost nine months. Mother was granted four hours of supervised visitation each week until the juvenile court reduced that to two one-hour closely supervised visits per week on the agency's motion.

{¶7} After a five-day hearing, the magistrate found R.P. to be an abused child pursuant to R.C. 2151.031(B), (C), and (D), and a dependent child pursuant to R.C. 2151.04(C). J.A. was also found dependent pursuant to R.C. 2151.04(C). The magistrate dismissed the agency's allegations of dependency pursuant to R.C. 2151.04(D) for each child as having not been proven. By agreement of the parties, the matter proceeded immediately to disposition, after which the magistrate placed the children in the temporary custody of CSB and adopted the agency's case plan as the order of the court. Mother and Father both filed timely objections to the magistrate's adjudicatory/dispositional decisions. Mother challenged the juvenile court's jurisdiction, the magistrate's order directing Mother to merely proffer a portion of the testimony of a certain medical doctor, and the findings that the children were abused and/or dependent.

{¶8} The juvenile court issued its judgment, overruling Mother's and Father's objections. The trial court concluded that it had jurisdiction to consider CSB's complaints. Although it did not expressly address Mother's challenge to the order that she proffer certain testimony, the juvenile court implicitly rejected Mother's argument when it both failed to cite to any evidence presented by that witness in its discussion and overruled all objections. Upon consideration, but disregarding the evidence regarding the timing or age of the child's injuries, the juvenile court found that R.P. was an abused child pursuant solely to R.C. 2151.031(C). It dismissed the remaining allegations of abuse pursuant to subsections (B) and (D). It found both children dependent pursuant to R.C. 2151.04(C) and dismissed the remaining allegations of

dependency pursuant to subsection (D). The children were retained in the temporary custody of CSB.

{¶9} CSB subsequently returned the children to Mother's legal custody under an order of protective supervision by the agency pursuant to a joint agreed entry. Thereafter, Mother filed a timely appeal in which she raises four assignments of error for review. Father has not appealed. This Court rearranges and consolidates some assignments of error.

### ASSIGNMENT OF ERROR IV

THE TRIAL COURT ERRED IN FINDING THAT THE JUVENILE COURT HAD JURISDICTION OF THIS CASE WHEN IT WAS UNDISPUTED THAT THE CHILDREN DID NOT LIVE IN OHIO AND NO INJURY WAS SUSTAINED IN OHIO.

{¶10} Mother argues that the juvenile court lacked jurisdiction over these cases. It is unclear whether Mother is arguing a lack of personal jurisdiction or a lack of subject matter jurisdiction. In either case, this Court disagrees.

{¶11} As an initial matter, this Court notes that Mother failed to cite to any law in support of her argument that the juvenile court lacked jurisdiction in this matter. She makes one brief reference to the juvenile court's citation to R.C. 2151.31 to say that the children were not taken into custody pursuant to that statute. She fails to explain why that would be dispositive to the issue of jurisdiction. In addition, Mother makes a reference to "the UCCJEA" without identifying any specific provision or explaining how that body of law is dispositive of her challenge. Nevertheless, as a party or any court may raise the lack of subject matter jurisdiction at any time, this Court will address Mother's jurisdictional challenges. *See In re J.N.*, 9th Dist. Summit Nos. 24090 and 24115, 2008-Ohio-3435, ¶ 33.

{¶12} As to personal jurisdiction, this Court has held that "[t]he juvenile court acquires personal jurisdiction over a party in a custody proceeding once the party has been duly served with

summons and provided notice of the proceedings." *In re H.T.*, 9th Dist. Summit No. 24087, 2008-Ohio-3436, ¶ 9. A party waives any challenge to personal jurisdiction if she fails to raise it "through the first pleading, motion, or appearance in the trial court." *In re M.T-B.*, 9th Dist. Summit No. 26866, 2013-Ohio-4998, ¶ 7, citing *In re J.P.*, 9th Dist. Summit No. 23937, 2008-Ohio-2157, ¶ 7.

{¶13} Mother claims that she raised the issue by motion in the children's prior cases. However, those cases were dismissed, so nothing remained pending. Accordingly, she could not have "renewed" any motion that did not exist. Nevertheless, she orally raised the jurisdictional challenges at the hearing.

{¶14} Mother does not dispute that she was properly served below. The record evidences proper service on Mother. Therefore, her argument that the juvenile court lacked personal jurisdiction fails.

{¶15} As to subject matter jurisdiction, it is well settled that

> "Subject matter jurisdiction focuses on the court as a forum and on the case as one of a class of cases, not on the particular facts of a case or the particular tribunal that hears the case." *State v. Swiger*, 125 Ohio App.3d 456, 462 (9th Dist.1998)[, abrogated on other grounds by *State v. Hutton*, 100 Ohio St.3d 176, 2003-Ohio-5607]. The juvenile court has exclusive original jurisdiction over children who are alleged to be [abused,] neglected or dependent, R.C. 2151.23(A)(1), and also has exclusive original jurisdiction to determine the custody of any child not a ward of another state court. R.C. 2151.23(A)(2). *State ex rel. Brooks v. O'Malley*, 117 Ohio St.3d 385, 2008-Ohio-1118, ¶ 8.

*In re H.T.* at ¶ 8.

{¶16} R.P. was alleged to be abused and dependent, while J.A. was alleged to be dependent, thereby invoking the subject matter jurisdiction of the juvenile court pursuant to R.C.

2151.23(A)(1). Moreover, there were no other cases involving the children pending in any other state court, thereby alleviating any bar to jurisdiction pursuant to R.C. 2151.23(A)(2).[1]

{¶17} Mother has failed to demonstrate that the juvenile court lacked jurisdiction in the proceedings regarding J.A. and R.P. Accordingly, her fourth assignment of error is overruled.

## ASSIGNMENT OF ERROR III

DR. GANAPATHY'S TESTIMONY WAS IMPROPERLY LIMITED AND DISREGARDED.

{¶18} Mother argues that the juvenile court erred by limiting and disregarding the testimony of one of R.P.'s treating physicians, Dr. Ganapathy. This Court concludes that Mother fails to allege any reversible error.

{¶19} The juvenile court did not expressly discuss Mother's objection to the magistrate's limitation of the witness' testimony. Nevertheless, by not making any reference to the proffered testimony, the juvenile court implicitly rejected Mother's argument in that regard. There is no dispute, and the record demonstrates, that the juvenile court expressly overruled all of Mother's objections before entering judgment. *C.f. Young v. Young*, 9th Dist. Wayne No. 08CA0058, 2009-Ohio-5050, ¶ 10 (concluding that a judgment that finds that objections *should* or *ought* to be overruled is not definitive enough to create a final, appealable order), and *Deutsche Bank Natl. Trust Co. v. Omar*, 9th Dist. Summit No. 28647, 2018-Ohio-2563, ¶ 8 (remanding for further consideration because the trial court did not mention some issues to which appellant had objected and failed to expressly rule on any of the objections, but merely entered judgment). Accordingly, this Court will address Mother's assigned error.

---

[1] No other proceedings involving the children were pending in either Ohio or any other state, as the North Carolina child protective services agency had closed its case without filing any complaints regarding the children in that state.

{¶20} Dr. Ganapathy treated R.P. after the child's admission to ACH. The magistrate allowed him to testify to matters relating to the child's subdural hematoma. In fact, the witness' admitted testimony consisted of approximately 60 pages of the transcript. The magistrate only required a proffer of Dr. Ganapathy's testimony relating to the child's rib fracture. That proffered testimony, elicited via both direct and cross-examination, consisted of an additional 15 pages of the transcript. At no time did Mother seek to elicit Dr. Ganapathy's opinion as to whether or not R.P. was a victim of abuse, i.e., the critical inquiry at the adjudicatory hearing. In fact, during preliminary discussions regarding the admissibility of the doctor's testimony, due to notice issues regarding the identity of witnesses, Mother asserted that she did not plan to ask Dr. Ganapathy to render an opinion as to abuse.

{¶21} All transcript pages of Dr. Ganapathy's testimony cited by Mother were admitted by the juvenile court, so that testimony was not limited. Mother fails to cite to any parts of the record which the magistrate required Mother to proffer. She does not explain how the absence of any excluded evidence impacted her case. Accordingly, Mother has not demonstrated either prejudice or the existence of any reversible error on appeal as to the limitation of Dr. Ganapathy's testimony.

{¶22} This Court emphasizes, however, that a substantial portion of Dr. Ganapathy's testimony was admitted. While the juvenile court referenced the other physicians in its judgment entry, it did not mention Dr. Ganapathy at all. While we cannot affirmatively state that the juvenile court disregarded the admitted evidence, the absence of any reference to Dr. Ganapathy indicates a possible disregard of all of his testimony. Upon reconsideration of the children's dispositions on remand, the juvenile court must consider all relevant evidence, including the testimony of Dr. Ganapathy that was admitted at the hearing.

{¶23} To the extent that Mother's third assignment of error challenges the limitation on Dr. Ganapathy's testimony, it is overruled. This Court directs the juvenile court, however, to consider the testimony of Dr. Ganapathy that was properly before it.

## ASSIGNMENT OF ERROR I

[CSB] DID NOT PRESENT CLEAR AND CONVINCING EVIDENCE THAT R.P. AND [J.A.] WERE ABUSED OR DEPENDENT AND, THEREFORE, THE FINDINGS OF ABUSE AND DEPENDENC[Y] WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

## ASSIGNMENT OF ERROR II

THE DECISION THAT R.P. WAS ABUSED AND THAT SHE AND [J.A.] WERE DEPENDENT WAS NOT SUPPORTED BY SUFFICIENT CREDIBLE EVIDENCE.

{¶24} Mother argues that the trial court erred by adjudicating R.P. an abused and dependent child, and J.A. a dependent child. This Court concludes that the juvenile court's failure to properly consider the facts and issues relevant to a finding of abuse requires reversal and remand for reconsideration. Moreover, as the findings of dependency were premised on the finding that R.P. was abused, those findings too require reversal.

{¶25} The juvenile court's adjudication of a child as dependent, neglected, or abused must be based on clear and convincing evidence. R.C. 2151.35(A)(1). "'Where the proof required must be clear and convincing, a reviewing court will examine the record to determine whether the trier of fact had sufficient evidence before it to satisfy the requisite degree of proof.'" *In re K.B.*, 9th Dist. Summit No. 21365, 2003-Ohio-3784, ¶ 13, quoting *State v. Schiebel*, 55 Ohio St.3d 71, 74 (1990), cert. denied *Warner v. Ohio*, 499 U.S. 961 (1991). "In the absence of clear and convincing evidence that the child is dependent, neglected, or abused, the juvenile court must dismiss the complaint * * *." *In re C.S.*, 9th Dist. Lorain Nos. 16CA010989 and 16CA010990, 2017-Ohio-4345, ¶ 14, citing R.C. 2151.35(A)(1) and Juv.R. 29(F)(1). Clear and convincing evidence is

evidence that "'produce[s] in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'" *In re C.G.*, 9th Dist. Summit No. 29171, 2019-Ohio-2102, ¶ 9, quoting *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 368 (1985).

{¶26} Mother challenges the finding that R.P. was abused, as well as the related findings that R.P. and J.A. were also dependent. The juvenile court premised its adjudications of dependency solely on the fact that it found R.P. to be an abused child. Accordingly, if the finding that R.P. was abused is determined to be error, then the findings of dependency will also fail in this case.

{¶27} In relevant part, R.C. 2151.031(C) defines an "abused child" as one who "[e]xhibits evidence of any physical * * * injury * * *, inflicted other than by accidental means, or an injury * * * which is at variance with the history given of it." R.C. 2151.04(C) defines a "dependent child" as one "[w]hose condition or environment is such as to warrant the state, in the interests of the child, in assuming the child's guardianship."

{¶28} In this case, multiple medical professionals testified regarding how and when R.P.'s injuries might have occurred. Mother's experts and other medical providers opined that the child's injuries likely existed while the newborn R.P. was still a patient in the NICU, so that her injuries would have been the accidental result of either birth trauma or subsequent medical care. CSB's expert disagreed, but modified his opinion regarding the timing of the injuries multiple times. He initially believed that the child could only have been injured while in Ohio and in Mother's care. He later reported that R.P. sustained her injuries after her release from the NICU into Mother's care, but that the child may have been injured while the family was still in North Carolina. Ultimately, however, he acknowledged the possibility that R.P. may have sustained her injuries

during her last week in the NICU, while the child was under the care and control of medical professionals.

{¶29} After determining jurisdiction, in rendering her decision on the issue of abuse, the magistrate expressly stated that the timing or "age of [R.P.]'s injuries [is] not relevant. The primary focus is on whether the injuries were accidental or non-accidental." However, the timing or age of the child's injuries is in fact key to a determination of whether the child was abused. If the medical professionals could not rule out the injuries as having occurred while the child was receiving care in the NICU, then accidental trauma was a reasonable cause. On the other hand, if the child's injuries could only have occurred after her release from the NICU into Mother's admitted sole care, then non-accidental trauma, i.e., abuse, may have been the cause.[2]

{¶30} Mother challenged via objections the magistrate's assertion in her analysis that the timing or age of the injuries was not relevant to the determination of abuse. In overruling Mother's objections, the juvenile court did not discuss the significance of the medical opinions regarding the age of R.P.'s injuries, including the continuing modifications that CSB's expert made to his own opinion as to when the child's injuries may have occurred. It moreover overruled Mother's objection to the magistrate's finding that timing was irrelevant. On appeal, Mother again argues that the age of R.P.'s injuries, and therefore the time at which they occurred, is key to a sound determination of whether the child was abused or merely a victim of accidental trauma. This Court agrees.

---

[2] This Court renders no opinion at this time as to whether any injuries that might have occurred while R.P. was in Mother's care were a result of abuse.

{¶31} The juvenile court adopted and applied the magistrate's erroneous analytical basis for determining whether R.P. was an abused child. This Court declines to render any conclusions regarding the children's adjudications, as they would necessarily be based on factual findings and other bases that we would have made in the first instance. As a reviewing court, we decline to assume the role of the juvenile court to engage in an analysis of the relevant facts in the first instance to determine whether CSB met its burden of proof to establish abuse and dependency. *See In re A.S.*, 9th Dist. Summit No. 29472, 2020-Ohio-1356, ¶ 24-25. Because the juvenile court premised its judgment on an incorrect analysis and failed to consider the relevance of evidence addressing the timing or age of R.P.'s injuries, this Court is compelled to reverse the findings of abuse and dependency and to remand the matter for further consideration of all the admitted evidence adduced at the multi-day adjudicatory hearing. Accordingly, this Court declines to address the substance of Mother's first and second assignments of error.

III.

{¶32} Mother's third and fourth assignments of error are overruled. This Court declines to address the substance of Mother's first and second assignments of error. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed in part, reversed in part, and the cause remanded for further proceedings consistent with this opinion.

Judgment affirmed in part,
reversed in part,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

DONNA J. CARR
FOR THE COURT

CALLAHAN, P. J.
SCHAFER, J.
CONCUR.

APPEARANCES:

WILLIAM T. WHITAKER and ANDREA L. WHITAKER, Attorneys at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and JACQUENETTE S. CORGAN, Assistant Prosecuting Attorney, for Appellee.